THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* WILLIAM G. LEAKAS, Defendant-Appellant—(CARL VOGEL *et al.*, Defendants-Appellees.)

(No. 55511;

First District—May 19, 1972.

Phillip S. Makin, of Chicago, (Harry G. Fins, of counsel,) for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Gayle F. Haglund, Assistants Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Defendant Leakas (hereinafter "defendant"), appeals from an order of default against him, from a decree of demolition entered with respect to a building owned by him, and from the denial of his motion to quash service of summons upon him and to vacate the Decree of Demolition. He raises five issues on appeal:

(1) Service by publication is not available in an action for the demolition of a building;

(2) Service by publication was jurisdictionally insufficient as the proceeding was *"in personam,"* not *"in rem";*

(3) The affidavit upon which the service by publication was based is false;

(4) Errors on the face of the record invalidate the demolition decree; and

(5) There was no evidence to warrant the entry of a demolition decree.

On August 27, 1968, a complaint was filed by the City against the four named defendants, alleging that the building located at 1422 W. Adams (rear) was in a dangerous condition and a menace to public safety in that it was maintained in violation of certain sections of both the Municipal Code of Chicago and the Illinois statutes.

After summons was returned "Not Found," the Corporation Counsel, on November 8, 1968, filed an Affidavit for Publication, and notice of the pendency of the action was published in the law Bulletin on November 11, 18, and 25, 1968. A copy of the published notice was mailed by the Clerk to defendant at 1422 W. Adams, but was returned by the Post Office, stamped "Moved, left no address." While no default order was entered against defendant until January 7, 1969, the court, without notice, entered a Decree for Demolition on December 17, 1968, in which it also retained jurisdiction to ascertain the costs of demolition and to enter a money judgment therefor against defendant. The decree also authorized the City to attach a lien against the premises for the costs of demolition. While the decree recites that the court heard evidence, the Report of Proceedings discloses that there was no testimony, but a mere colloquy between the Corporation Counsel and an unnamed Building Inspector in which the latter stated that as of December 12, 1968, the premises in question were vacant and locked, with the building in poor condition, with rotted mortar joints, missing gutters and downspouts, broken sash doors, frames and window panes, that "the percentage of depreciation was only 9% risen to approximately 15%"; and that it was "going to be" dangerous and hazardous. The building was demolished in May, 1969.

Defendant filed a special appearance on May 13, 1969, to challenge the jurisdiction of the court on the grounds that service by publication was inadequate to confer jurisdiction on the court either because of the *"in personam"* nature of the action, or because the demolition statute (Ill. Rev. Stat. 1969, ch. 24, par. 11—31—1), does not specifically provide for service by publication, or because the affidavit upon which such service was based was false. On July 25, 1969, defendant filed a Motion to

Quash Service of Summons and Vacate Judgment Order. An evidentiary hearing was conducted at the conclusion of which the motion was "denied in whole." The court found that it had acquired *"in rem"* jurisdiction over the property through service by publication. The order contained no finding of an *"in personam"* jurisdiction over defendant, but by denial of defendant's motion in its entirety, we must presume that the court found proper personal jurisdiction over defendant, or it would not have let stand the parts of the decree relating to costs, which could have been based only upon jurisdiction over defendant's person. Defendant now appeals.

At the hearing on the motion to vacate, a deputy sheriff testified that on August 30, 1968, in the course of his duties, he had a summons to be served upon defendant, and he drove to 1422 W. Adams, the address for service noted on the face of the summons. As was his custom in such cases, he just pulled up without getting out of his car, looked at the building, and "vaguely remembered" that the doors of the premises were boarded up. He did not remember going up to the building and knocking on the door, nor making any effort to determine whether anyone was on the premises. He did not notice if there were any padlocks on the doors, and from his car he saw no signs on the building or on the lot. He did not remember whether the building was the one on the front of the lot or the one in the rear. He "just looked at it from a distance," stayed a few seconds to make his notes, and "took off." He was never in the building at all, but "just wrote it was empty." When he returned to the office, he made out a report that defendant was "Not Found," and the building empty. He did not mail a copy of the summons to defendant.

Defendant testified at the hearing on his motion to vacate, and by way of affidavit in support of the motion, that he had bought the property in question, a two-story brick building at 1422 W. Adams (rear) in 1959 for $15,000, and that it had an appraised market value of $25,000 on September 4, 1968. The building had two-story steel beams and a cement floor with no partitions on either the first or second floors, leaving only open space. The premises were rented out to tenants for storage purposes. In 1968, one tenant, Reliance Elevator, occupied the entire building for the storage of its cables and beams. Under the leasing agreement, the tenant was to pay a monthly rental and provide for the maintenance of the doors and windows only. The tenant did not have his name on the doors of the building, and did not receive mail at that address.

When Reliance Elevator moved out in May, 1968, defendant, himself, used the premises as a workshop, spending four days a week there to repair furniture. Defendant had a sign on the rear door of the building

at 1422 W. Adams about 15 feet above ground level and a sign about four feet high in the front lot of 1422 W. Adams, both of which stated his name and the telephone number and address of the building. These signs had been posted on the premises since spring, 1968, to aid in the possible sale or rental of the property. During the months of August and September, 1968, when the signs were still posted and defendant was working on the premises, defendant saw no one from the Chicago Building Department and never received any notice from them with reference to non-compliance with the Building Code. He did not live in the building at 1422 W. Adams and did not receive mail at that address. During this period of time, defendant's home was located at 4443 N. Ashland, where he has lived since 1957, but he had furniture in the Adams Street building and he kept his tools there in August, 1968.

Defendant testified that in May, 1969, he went to the premises to finish some work he was doing on some furniture, and found that the building was gone. At his last previous visit, two or three days earlier, the building had been standing. No notice or summons or signs about demolition had been served on him or put under the door, and nobody had phoned him. To determine what had happened to his building, defendant spoke not only to people from the neighborhood, but to people from both the Bureau of Sanitation and the Demolition Section of the Building Department. Photographs in evidence show signs on the building and on the fence, and there was a similar sign at the back. Defendant testified that the picture he was referring to was taken in April, 1969, but that the same signs had been there in August, 1968. One was four feet high. They bore his name, address and phone number. One of the photographs showing the demolished building also shows a quantity of furniture piled in the alley.

A building inspector testified that he first inspected the premises on May 22, 1968, then again in July, 1968, and then within the week of every court date concerning the premises. During none of his inspection tours did he observe anything with respect to the identification of the owner of the premises. He did not make an inspection during the month of August, 1968, and from his control file he could not say that anyone else had inspected the premises during that month. (Neither he nor anyone else testified to having discovered any violations during inspections of the premises.)

On the morning of September 4, 1968, a Youth Officer for the Chicago Police Department had occasion to investigate a complaint of burglary at 1422 W. Adams. He and his partner drove to the premises and spoke to defendant who was standing in the street waiting for them. Defendant

informed them that someone had broken into the rear building at 1422 W. Adams, so they went to the rear door of the building which had a lock, and saw that the hasp had been forced open. He entered the building immediately behind defendant and did not notice if there was a sign on the door. Miscellaneous furniture was inside the building. He was on the premises for 20 to 30 minutes, but did not recall seeing any signs either on the building or on the lot.

A general contractor testified that in August, 1968, he had accompanied defendant, at the latter's request, to look over the premises at 1422 W. Adams. The two-story brick building had a large sliding door at the alley side in the rear and was in good condition except for three broken windows. There was no other damage to the building. He went through the building and saw some tools and building materials. There was a sign about 18 inches square on the door off the alley which stated a phone number and other information regarding the building. There was another sign on a fence in the empty lot in the front of 1422 W. Adams. It said, "for information regarding this property," and it, too, had a phone number on it. Similar signs had been on the premises in the same locations in June, 1968, he having used the telephone number noted on one of the signs to contact defendant. In December, 1968, when he again visited the premises, the sign which had been on the fence in June and August, 1968, was still there. After the building was demolished, the sign was still on the fence.

Defendant contends, first, that since the Demolition Statute does not mention service by publication, such service is not authorized in this type of litigation. Ill. Rev. Stat. 1969, ch. 24, par. 11—31—1 reads in part:

*"Demolition or repair—Lien*

The corporate authorities of each municipality may demolish, repair or cause the demolition or repair of dangerous and unsafe buildings or uncompleted and abandoned buildings, * * *. * * * The corporate authorities shall apply to the circuit court of the county in which such building is located for an order authorizing such action to be taken with respect to any such building if the owner or owners thereof, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put such building in a safe condition or to demolish it. * * * Where, upon diligent search, the identity or whereabouts of the owner or owners of any such building including the lien holders of record is not ascertainable, notice mailed to the person or persons in whose name such real estate was last assessed is sufficient notice under this Section. * * *."

Defendant's reliance on the absence of the mention of service by

publication in this statute is ill-founded, as this statute deals only with the separate procedure of giving 15 days' notice to the owner to either repair the building or suffer the consequences of demolition, rather than a procedure for the service of process in the suit.

Defendant's brief makes a point of the fact that some other statutes governing special proceedings (e.g., condemnation) provide specifically that service may be made by publication, and in the absence of such a provision in the instant statute, such service would not be authorized. This argument falls, however, when we consider the clear language of the Civil Practice Act which states in Section 1 that it shall apply to all civil proceedings, both at law and in equity, except certain listed proceedings which do not include demolition. (Ill. Rev. Stat. 1969, ch. 110, par. 1.) Further, Section 14 of that Act, treating with service by publication, affirmatively declares its applicability to "any action affecting property or status within the jurisdiction of the court." Ill. Rev. Stat, 1969, ch. 110, par. 14.

In *City of Chicago v. Logan*, 31 Ill.2d 281, 201 N.E.2d 428; 56 Ill. App.2d 291, 205 N.E.2d 795, where defendant's only contention was that service by publication was improper in his case because the requisite due inquiry was absent, this court disagreed with defendant's claim, and affirmed. However, implicit in the decisions of both this court and the Supreme Court is the proposition that if the defendant "on due inquiry cannot be found," the requisite conditions for service by publication are met, and such service is sufficient to confer jurisdiction on the court in a demolition action.

■■ Defendant argues, however, and rightly so, that the instant case was not entirely "affecting property," since the Complaint for Fine and Other Relief prayed, in addition, for the imposition of a fine and attorney's fees, and a judgment for the costs of demolition. So much of the proceeding as relates to these matters, therefore, is necessarily *"in personam"* in nature, and service by publication would be jurisdictionally insufficient to support such a money judgment against defendant. (Ill. Rev. Stat. 1969, ch. 110, par. 14.) However, we believe that this proceeding is divisible in character, and so much thereof as concerns the repair or demolition of the property was *"in rem"* in nature, and service by publication would be sufficient to confer jurisdiction on the court for the purpose of dealing with the res. *People v. Logan, supra.*

In this case, though, the service by publication was fatally infirm for lack of "due inquiry" to find defendant prior to publication. The publication statute, *supra*, lists certain conditions which must be met before such service is available, one condition being that "on due inquiry [de-

fendant] cannot be found." Plaintiff itself does not claim to have made any investigation to locate the owner. The record simply discloses that the process server drove to the address for service on defendant and, without getting out of his car, concluded, on the basis of what he saw from that substantial distance (it being a rear building located on an alley), that the building was empty, drove away in a few seconds, and reported that defendant was "Not Found." We shall not repeat all the details of his testimony; it hardly represented an inquiry at all, let alone "due inquiry." Aside from conflicting testimony that the doors were not boarded up, the facts indicate that defendant was on the premises four days a week, that signs on the premises gave a telephone number at which defendant could be reached, and that defendant was, in fact, reached by one witness who had called the posted number and contacted defendant.

■■ The provision for "due inquiry" is not intended as a *pro forma* or useless phrase, requiring only perfunctory performance, but, on the contrary, requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit. (*Graham v. O'Connor*, 350 Ill. 36, 40—41, 182 N.E. 764, 766; *Romain v. Lambros*, 12 Ill.App.2d 64, 68, 138 N.E.2d 704, 706.) Such a well-directed effort was not even attempted in this case, and therefore the affidavit, signed by the Corporation Counsel, which alleged that "on due inquiry [defendant] cannot be found," did not speak the whole truth. The statute requiring strict compliance, such a faulty affidavit failed to confer jurisdiction on the trial court over the property in question, and the demolition decree is therefore void. *Green v. Walsh*, 5 Ill. App.2d 535, 539, 126 N.E.2d 398, 399-400.

Even if the trial court had acquired *"in rem"* jurisdiction over the property in question, its decree would have to be set aside, as there was no evidence to warrant the entry of such a decree. The *ex parte* hearing (conducted prior to default and without notice), consisted of no testimony at all, but only of a colloquy between the Corporation Counsel and an anonymous Building Inspector as follows:

"Corporation Counsel: When were you there?

Building Inspector: Rear building, Judge, I was there the 12th [December, 1968].

Corporation Counsel: Describe the building as you found it.

Building Inspector: Two story brick garage loft and building. It is vacant and locked. Masonry in very poor shape. Rotted open mortar joints. Missing gutters and downspouts. Rotted broken, and defective sash doors, frames, and window panes.

Corporation Counsel: Percentage of depreciation?

Building Inspector: Percentage of depreciation was only 9%, risen to approximately 15%.

Corporation Counsel: Going to be dangerous and hazardous at this time?

Building Inspector: It is.

Corporation Counsel: Decree for demolition.

Court: Decree for demolition is allowed  *  *  *."

■■ It is well settled that the courts will go no further than necessary to protect the public interest. In *City of Aurora v. Meyer*, 38 Ill.2d 131, 136-137, 230 N.E.2d 200, 203-204, the court stated:

"Property may be ordered destroyed under certain conditions *but only if the danger cannot be abated in any other way.* It is only in cases *where an absolute necessity exists* that courts adopt the drastic method of correction by ordering destruction of the property.  *  *  * Where hazardous conditions may be remedied by repair without major reconstruction the building may not be destroyed." (Emphasis supplied.) See also *City of Chicago v. Busch* (March, 1971), (Ill.App.2d) 270 N.E. 2d 249, 253, leave to appeal denied No. 44267. There, the court said:

"It follows, therefore, that *unless plaintiff had proved the building in this case could not be repaired* and the municipal code violations corrected by means other than complete destruction, it had to seek relief other than demolition." (Emphasis supplied.)

■■ In the case at bar, the court gave no consideration whatsoever to the primary question of repair, and heard no evidence at all, nor even a reasoned suggestion that the building was in such a dangerous condition that it could not be repaired without resort to major reconstruction.

■■ The decree appears also to suffer from further defects. In the matter of default, the cart was put before the horse in that the decree of demolition was entered on December 17, 1968, whereas the order of default was not entered until January 7, 1969. Further, the City has introduced nothing to show compliance with the 15-day written notice required by the demolition statute quoted above. See *City of Danville v. Hartley*, 101 Ill.App.2d 31, 241 N.E.2d 460.

For any or all the reasons stated, the decree of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LORENZ, P. J., and DRUCKER, J., concur.