First District
March 6, 2006

No. 1-05-0610

| | |
|---|---|
| EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORPORATION, Agent for the Owner of Bourbon Square Apartments, | ) ) ) ) Appeal from<br>) the Circuit Court<br>) of Cook County |
| Plaintiff-Appellee, | ) |
| | ) 04 M1 711358 |
| v. | ) |
| | ) Honorable |
| KHADIJAH NASOLO, | ) Edward Washington II, |
| | ) Judge Presiding |
| Defendant-Appellant. | ) |

JUSTICE McBRIDE delivered the opinion of the court:

Khadijah Nasolo appeals from an order of the circuit court of Cook County denying her motion to quash constructive service of process and vacate a default judgment order entered in favor of Equity Residential Properties Management Corporation, agent for the owner of Bourbon Square Apartments (Equity Residential), on a complaint seeking possession of 794 Pennsylvania Drive, Apt. #1, Palatine, Illinois, 60074. In accordance with the judgment order, the Cook County sheriff's office evicted Nasolo from the apartment during the summer of 2004.

Nasolo's primary contention on appeal is that the record shows her former landlord did not make sufficient efforts toward personal service before resorting to constructive service pursuant to section 9-107 of the Forcible Entry and Detainer Act. 735 ILCS 5/9-107 (West 2004). Nasolo also argues there was a fact dispute entitling her to an evidentiary hearing as to whether constructive service was justified. Alternatively, Nasolo contends we should find (1) constructive service by posting was ineffective, because it occurred in downtown Chicago rather than in the suburban Palatine neighborhood where the residential apartment unit was located, or

because posting at the County Building and Chicago's City Hall amounted to posting in one public place rather than two, or (2) the landlord sought enforcement of the order for possession prematurely while its claims for back rent, attorney fees, and costs were still pending. Nasolo asks this court to grant her motion to quash and vacate, or to remand the cause for an evidentiary hearing on the motion.

In a motion taken with the case, however, Equity Residential argues we should not address the merits of Nasolo's arguments and should dismiss the appeal with prejudice, because Nasolo's amended appellate brief does not conform with the supreme court rules. Since the amended brief sufficiently conforms with the mandated format, we deny Equity Residential's motion and proceed to our review.

Equity Residential filed suit against Nasolo on May 17, 2004, seeking unpaid rent for the month of May totaling $1,075.86, costs, attorney fees, and possession of the apartment unit it first leased to Nasolo in March 2004. Equity Residential filed the pleading in the circuit court's municipal department, first district, which is located in the Richard J. Daley Center, 50 West Washington Street, in downtown Chicago, and then placed copies of the complaint and summons with the Cook County sheriff's office for service of process. The summons indicated trial would take place on June 4, 2004.

The sheriff's return of service dated May 25, 2004, indicated four deputies made separate, unsuccessful attempts to serve Nasolo at the subject apartment. Service was attempted on Wednesday, May 19 at 8:18 a.m. or p.m. by Deputy No. 4786; on Thursday, May 20 at 8:15 p.m. by Deputy No. 4750; on Monday, May 24 at 10:11 a.m. by Deputy No. 4741, and on Tuesday,

May 25 at 6:37 p.m. by Deputy No. 3995. The last deputy sheriff made a checkmark next to "moved" as the "reason not served" and handwrote "moved -- vacant" under "additional remarks."

On June 2, 2004, Equity Residential's attorney, Wayne S. Shapiro, completed an affidavit for constructive service, alleging that Nasolo "on due inquiry cannot be found so that process cannot be served" and that her place of residence "upon diligent inquiry cannot be ascertained and his [*sic*] last known place of residence [was the subject apartment]." The statute Equity Residential was relying upon provides as follows:

> "Constructive service. If the plaintiff, his or her agent, or attorney files a forcible detainer action *** and is unable to obtain personal service on the defendant *** and a summons duly issued in such action is returned without service stating that service can not be obtained, then the plaintiff, his or her agent or attorney may file an affidavit stating that the defendant *** is not a resident of this State, or has departed from this State, or on *due inquiry* cannot be found, or is concealed within this State so that process cannot be served upon him or her, and also stating the place of residence of the defendant *** if known, or if not known, that upon *diligent inquiry* the affiant has not been able to ascertain the defendant's or unknown occupant's place of residence, then *** the defendant *** may be notified by posting and mailing of notices ***."

1-05-0610

(Emphasis added.)  735 ILCS 5/9-107 (West 2004).

The statute further specifies that notice by posting conveys limited jurisdiction to the court:

"However, in cases where the defendant *** is notified by posting

*** and the defendant *** does not appear generally, the court

may rule only on the portion of the complaint which seeks

judgment for possession, and the court shall not enter judgment as

to any rent claim joined in the complaint ***.  The claim for rent

may remain pending until such time as the defendant or unknown

occupant appears generally or is served with summons, but the

order for possession shall be final, enforceable and appealable if

the court makes an express written finding that there is no just

reason for delaying enforcement or appeal, as provided by

Supreme Court rule of this State."  735 ILCS 5/9-107 (West 2004).

The statute also specifies the contents of a notice and the procedures to be followed by the

sheriff:

"Such notice shall be *** directed to the defendant *** ,

shall state the nature of the cause *** and at whose instance issued

and the time and place for trial, and shall also state that unless the

defendant *** appears at the time and place fixed for trial,

judgment will be entered by default ***.  The sheriff shall post 3

copies of the notice in 3 public places in the neighborhood of the

4

court where the cause is to be tried *** [and] shall at the same time mail one copy of the notice addressed to such defendant *** at such place of residence shown in such affidavit. On or before the day set for the appearance, the sheriff shall file the notice with an endorsement thereon stating the time when and places where the sheriff posted and to whom and at what address he or she mailed copies as required by this Section. For want of sufficient notice any cause may be continued from time to time until the court has jurisdiction of the defendant or unknown occupant." 735 ILCS 5/9-107 (West 2004).

After attorney Shapiro tendered his sworn statement, the sheriff's office posted notice of the suit on June 4, 2004, at the Clark Street entrance of the County Building, the LaSalle Street entrance of Chicago's City Hall, and in Room 701 of the Richard J. Daley Center, and mailed copies of the documents to Nasolo at the apartment at issue. The notice indicated the case would next be called for trial on June 17, 2004.

When the case was called on Thursday, June 17, 2004, the trial judge noted Nasolo had neither appeared nor answered after she was constructively served. The judge entered an *ex parte* default order for occupancy and possession of the apartment, but stayed enforcement of the order until Thursday, June 24, 2004. More than a month later, on Sunday, July 26, 2004, Nasolo returned from a three-day trip to Boston, Massachusetts, went to the apartment, and discovered Equity Residential had regained possession and changed the locks at some point during the long

1-05-0610

weekend.

Nasolo then filed the motion at issue in this appeal. She contended in part that she had been generally available for personal service at the Palatine apartment or at the Rolling Meadows work address she disclosed in her rental application. In an attached affidavit, Nasolo swore that between March 1 and July 26, 2004, she lived alone in the one-bedroom apartment and that she was generally at work between 8 a.m. and 8 p.m. on weekdays and the occasional weekend. She concluded that since "no real attempts were made to find" her, constructive service was ineffective. Equity Residential filed a written response, which was supported by affidavits from two of its employees involved in managing the Bourbon Square Apartments, Barbara Gilleran and Sandy Shines, describing their efforts to communicate with Nasolo between May and mid-July 2004. Equity Residential argued that Gilleran and Shines' "numerous" efforts to communicate with Nasolo demonstrated she "could not be found" and that constructive notice was "necessary." At oral arguments, the trial judge recognized Nasolo was arguing in part Equity Residential "could have done more" to find her so that personal service could be made. He later found that Equity Residential's efforts had been sufficient and that it was clear from the record Nasolo "had knowledge of the action pending against her, and on two separate occasions, had contact with the plaintiff regarding the action," and he denied Nasolo's motion.

Nasolo's first specific contention on appeal is that Equity Residential failed to conduct an adequate investigation into her whereabouts and residential address before swearing it made the "due inquiry" and "diligent inquiry" that would entitle it to forego further attempts at personal service and rely on constructive service by posting pursuant to section 9-107 of the Forcible

6

Entry and Detainer Act. 735 ILCS 5/9-107 (West 2004). She argues adequate investigation in this particular case would have included attempting service at the workplace address she provided three months earlier when she rented the apartment, and that the trial judge held the landlord to a lesser standard, in reliance on a case that is factually distinguishable, *Household Finance Corp. III v. Volpert*, 227 Ill. App. 3d 453, 592 N.E.2d 98 (1992). She concludes attorney Shapiro's affidavit for constructive service was "false" and that the relief she sought in the circuit court should now be granted, or that the circuit court's order should be vacated and the cause remanded for an evidentiary hearing on this issue. Equity Residential counters that it strictly complied with the constructive service statute, that the circuit court correctly found it made adequate inquiries under the circumstances presented, and that the circuit court's ruling should be affirmed.

We will review the trial judge's ruling *de novo* since it was based entirely on documentary evidence. *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523, 695 N.E.2d 518, 521 (1998). The purpose of service of process is twofold. *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 926, 376 N.E.2d 1029, 1032 (1978) (*Horton*). First, it serves the purpose of giving notice to those whose rights are about to be affected by the plaintiff's action. *Horton*, 59 Ill. App. 3d at 926, 376 N.E.2d at 1032. Second, it vests jurisdiction in the court over the person whose rights are to be affected by the litigation. *Horton*, 59 Ill. App. 3d at 926, 376 N.E.2d at 1032. We note that *Horton* and other cases cited below concern constructive service by publication in a newspaper of general circulation pursuant to section 2-206 of the Civil Practice Act (735 ILCS 5/2-206 (West 2004)), rather than constructive

service by posting pursuant to section 9-107 of the Forcible Entry and Detainer Act (735 ILCS 5/9-107 (West 2004)), but that this authority is nevertheless generally relevant here.

"Every defendant in an action filed against him in this State is entitled to receive the best possible notice of the pending suit and it is only where personal service of summons cannot be had, that substituted or constructive service may be permitted." *Horton*, 59 Ill. App. 3d at 927, 376 N.E.2d at 1032. Securing jurisdiction by constructive service "is a concession of the law to the hard circumstance of necessity" (*Graham v. O'Connor*, 350 Ill. 36, 40, 182 N.E. 764, 766 (1932)), and this concession is not made readily.

Constructive service "is only allowable in certain limited cases, and then only after strict compliance with the statutes governing such service." *Horton*, 59 Ill. App. 3d at 926, 376 N.E.2d at 1032. "The statute is particular in enumerating the necessary steps. The phrases 'due inquiry' and 'diligent inquiry' in that statute are not intended as useless phrases but are put there for a purpose." *Graham*, 350 Ill. at 40-41, 182 N.E. at 766. Superficial efforts at complying with the statute will not suffice. *Horton*, 59 Ill. App. at 928, 376 N.E.2d at 1032 (a plaintiff must make more than a cursory effort to locate the defendant); *Graham*, 350 Ill. at 41, 182 N.E. at 766 (a perfunctory inquiry does not comply with the provisions of the statute). Instead, the law "requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit." *City of Chicago v. Leakas*, 6 Ill. App. 3d 20, 27, 284 N.E.2d 449, 455 (1972) (*Leakas*). "This is so that if possible service of process can be had in person." *Horton*, 59 Ill. App. 3d at 925, 376 N.E.2d at 1032. Depending upon the particular circumstances of a case, inquiring with neighbors, inquiring with known counsel, checking court

1-05-0610

records, and investigating employment information may be part of the "due inquiry" and "diligent inquiry" required of a plaintiff intending to rely on constructive service. See *e.g.*, *Horton*, 59 Ill. App. 3d at 927, 376 N.E.2d at 1033; *First Federal Savings & Loan Ass'n of Chicago v. Brown*, 74 Ill. App. 3d 901, 904, 393 N.E.2d 574, 576 (1979) (*Brown*); *In re T.B.*, 65 Ill. App. 3d 903, 906, 382 N.E.2d 1292, 1294 (1978); *Eckberg v. Benso*, 182 Ill. App. 3d 126, 537 N.E.2d 967 (1989).

Furthermore, if the statutorily mandated inquiries are not made, a plaintiff's affidavit for constructive service "does not speak the truth and cannot confer jurisdiction." *Marathon Finance Co. v. Pioneer Bank & Trust Co.*, 168 Ill. App. 3d 148, 151, 522 N.E.2d 248, 251 (1988), citing *Graham*, 350 Ill. at 41, 182 N.E. 764; *Horton*, 59 Ill. App. 3d at 929-30, 376 N.E.2d 1029. The party claiming benefit of constructive service bears the burden of showing strict compliance with every requirement of the statute, and nothing else will confer jurisdiction to the court or grant validity to the court's judgment. *Bank of Ravenswood v. King*, 70 Ill. App. 3d 908, 912, 388 N.E.2d 998, 1001 (1979) (*King*). When a defendant has not been served with process as required by law, the court has no jurisdiction over that defendant and a default judgment entered against him or her is void. *Brown*, 74 Ill. App. 3d at 905, 393 N.E.2d at 577; *King*, 70 Ill. App. 3d at 913, 388 N.E.2d at 1002. A petition attacking a judgment as void may be brought at any time, in either a direct or collateral proceeding. *Brown*, 74 Ill. App. 3d at 905, 393 N.E.2d at 577.

Based upon the record before us, we conclude that there is a significant question as to whether Equity Residential made due inquiry into Nasolo's whereabouts and diligent inquiry into

9

her place of residence before resorting to constructive service by posting on June 2, 2004. The record shows the eviction action was filed on May 17, 2004, and that the sheriff made four unsuccessful attempts over the course of six days in late May 2004 (between May 19, 2004, and May 25, 2004) to serve Nasolo at the subject apartment. All of the residential attempts at personal service occurred on weekdays between the hours of 8 a.m. and 8 p.m., and Nasolo swore that she could have been readily found at her place of employment, Monday through Friday, during those hours, and even occasionally on the weekends. We question whether sending the sheriff to one address, where four attempts at service were made over the course of six days, and then doing nothing more amounts to "an honest and well-directed effort" on Equity Residential's part "to ascertain the whereabouts" of Nasolo so that she could be served in person. *Leakas*, 6 Ill. App. 3d at 27, 284 N.E.2d at 455. "Every defendant *** is entitled to receive the best possible notice of a pending suit and it is only where personal service of summons cannot be had, that substituted or constructive service may be permitted." *Horton*, 59 Ill. App. 3d at 926, 376 N.E.2d at 1032. Nasolo's sworn statement was not contradicted and entitled her to an evidentiary hearing, with the burden of proof on Equity Residential to establish that adequate inquiry was made by Equity Residential to locate Nasolo prior to June 2, 2004, when its attorney completed the affidavit for constructive service. *Horton*, 59 Ill. App. 3d at 926, 376 N.E.2d at 1033; *Brown*, 74 Ill. App. 3d at 907, 393 N.E.2d at 579.

We also point out that one of the sheriff's deputies suggested the attempts at personal service were unsuccessful because Nasolo had "moved" and the apartment unit was "vacant."

10

Although the deputy did not provide any facts supporting the statement, and Nasolo has affirmatively stated that she was still residing in the unit, at the time, the deputy's statement apparently gave Equity Residential reason to doubt whether it knew where Nasolo was residing and could be found for personal service of process. In fact, in its written response to Nasolo's motion to quash, Equity Residential indicated it had become certain Nasolo was not residing in the subject apartment and that "[a]ny further attempts at service [at the Bourbon Square unit] would be mere exercise in futility." Nevertheless, the record indicates neither Equity Residential's attorney nor its apartment management staff made any attempts to find Nasolo before tendering the affidavit for constructive service on June 2, 2004. Equity Residential persuaded the trial judge that the efforts of the apartment management staff, Sandy Shines and Barbara Gilleran, "to communicate with the Defendant" amounted to "adequate due [and diligent] inquiry to obtain personal service on the defendant, thereby justifying the constructive service by [posting]." We point out, however, that almost all of the efforts described in the staff's affidavits occurred after the attorney's affidavit for constructive service was completed on June 2, 2004, and even well after the default judgment was entered on June 17, 2004. Furthermore, the earlier efforts do not add up to compliance with the statute. Shines swore she telephoned Nasolo at work on May 15, 2004. This was before the eviction suit was filed, and Shines gave no indication that the purpose of her telephone call was to determine where Nasolo could be found so that personal service could be had. Gilleran's affidavit also missed the mark. Gilleran swore that she "sent" certified mail to Nasolo on May 26, 2004, regarding her overdue rent and the possibility of eviction. Although Gilleran affirmatively stated she "sent" a letter, her

11

affidavit and attached exhibits did not disclose whether or when the letter was delivered to Nasolo at the subject apartment or returned to Gilleran by the postal service. Thus, Gilleran's letter could not be construed as an inquiry or confirmation of Nasolo's whereabouts. Another exhibit to Gilleran's affidavit was a certified mail receipt indicating correspondence was sent to "Argent Mortgage Co., LLC, Tower 2 Continental Tower, Attn. Khadijah Nasolo" on May 27, 2004. The record does not disclose the contents of the correspondence, and even if we assume it was a copy of Gilleran's letter dated May 26, 2004, the certified mail receipt indicates delivery was accepted on May 28, 2004, by Chris Ersalaco, not defendant Nasolo. The rest of Gilleran's affidavit addresses contacts or attempted contacts with Nasolo after attorney Shapiro completed his affidavit on June 2, 2004. More specifically, Gilleran swore: (1) "Plaintiff" did an "occupancy check" of the apartment on June 21, 2004, and found clothing but no furniture, (2) Nasolo dropped off two $500 money orders on June 30, 2004, and promised "the management office" she would pay off the remaining balance before the sheriff came to evict her, (3) Gilleran sent Nasolo a letter, which was also posted on the apartment door, on July 7, 2004, indicating the sheriff would be enforcing the order for possession, (4) Gilleran "attempted to call [Nasolo] at work and no one answered", (5) Gilleran "attempted to call [Nasolo's] emergency contact number but it was not in service," followed by, (6) Nasolo's unsuccessful attempt on July 15, 2004, to tender a $1,000 money order by certified mail. In short, neither Shines nor Gilleran describes any attempts to ascertain Nasolo's personal whereabouts before attorney Shapiro swore on June 2, 2004, that Nasolo "on due inquiry cannot be found" and Nasolo's place of residence "upon diligent inquiry cannot be ascertained."

12

Furthermore, the trial judge's conclusion that "clear[ly] *** the defendant had knowledge of the action pending against her, and on two separate occasions, had contact with the plaintiff regarding the action" was not only irrelevant to Nasolo's motion but also factually incorrect. The judge stated that on May 26, 2004, Nasolo "received and signed" for certified mail sent to her workplace regarding "the money she owed to Plaintiff for rent." As just pointed out above, however, Chris Ersalaco, not Kadijah Nasolo, received certified mail on May 28, 2004, and the record does not disclose what was in the envelope. The trial judge also stated that on June 30, 2004, Nasolo "dropped off to plaintiff two separate money orders *** for past due rent and said she would pay off the remaining balance." Nasolo's purported acknowledgment that she was behind on the rent and intended to catch up on her obligation is not an indication that Nasolo knew her landlord had already filed an action to collect the unpaid balance and regain possession of the apartment unit. More importantly, a defendant's actual knowledge that an action is pending or that service has been attempted is not the equivalent of service of summons and would not relieve the plaintiff of its burden or vest the court with jurisdiction. *Horton*, 59 Ill. App. 3d at 930, 376 N.E.2d at 1035.

Additionally, *Volpert*, the case the trial judge expressly relied upon for the proposition that Equity Residential did not have to inquire with Nasolo's neighbors or attempt service at her workplace when attempts at residential service were unsuccessful, is distinguishable. It indicates the plaintiff mortgage lender knew for certain where the defendant borrower resided and tried repeatedly over the course of four months to serve him there during hours he was likely to be

13

found at home. *Volpert*, 227 Ill. App. 3d at 456, 592 N.E.2d at 99-100. More specifically, the sheriff attempted service nine times between November 28 and December 7, 1988, at the property that was subject to mortgage foreclosure. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The sheriff's return of service indicated that on the initial attempt at the North Odell residence, the deputy learned the defendant borrower "gets home 'around 7:00 p.m.' " and that five of the sheriff's eight subsequent attempts were made at 7 p.m. or later. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The sheriff's return further stated, " 'Lights on -- car in drive -- won't answer door.' " *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The plaintiff, nevertheless, did not stop trying to personally serve the defendant. The plaintiff next obtained appointment of a special process server (*Volpert*, 277 Ill. App. 3d at 454, 592 N.E.2d at 98), and this individual submitted affidavits dated March 1 and April 11, 1989, indicating he tried to serve the defendant not only at the North Odell residence but also at a business address. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The special process server's sworn statement referred to repeated attempts at personal service during the day, night, and weekends, and indicated that although the mortgaged residence appeared occupied, no one answered the door. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The mortgage lender's keeper of records learned that neither the sheriff nor the special process server could serve the defendant borrower at the mortgaged property, but confirmed in an affidavit that it was his last known address. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. In light of affidavits indicating there were repeated attempts at personal service over a four-month period, that the sheriff and private process server suggested someone was home but refusing to answer, and that the defendant's last known address

had been confirmed, the appellate court concluded "plaintiff's efforts fulfilled the due inquiry requirement" for constructive service (*Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99) and it rejected the argument that additionally someone should have inquired with neighbors or ascertained and attempted service at the defendant's workplace. *Volpert*, 227 Ill. App. 3d at 456, 592 N.E.2d at 100. *Volpert*'s circumstances contrast sharply with the present case in which there were only four attempts at service over only a six-day period, all of the attempts occurred on weekdays, the sheriff's return suggested the defendant had moved and the apartment was vacant, and, yet, the plaintiff made no further inquiries.

Rather, the more analogous case is *Brown*, 74 Ill. App. 3d 901, 393 N.E.2d 574, where the sheriff's return of service suggested further investigation was warranted, but the plaintiff did nothing more. In *Brown*, the sheriff's return of service indicated he made abode service on Ronald Brown, Jr. and his wife Audrey Brown on January 7, 1976, by leaving a copy of the writ with a member of their family, Vivian Pittman, and the plaintiff learned shortly thereafter that the Browns had been divorced on December 26, 1975. *Brown*, 74 Ill. App. 3d at 903, 393 N.E.2d at 576. Instead of investigating whether the Browns were still living at the mortgaged property and had a connection to Vivian Pittman, contacting Ronald Brown's divorce attorney to inquire about his whereabouts, or attempting service at the workplace address Ronald Brown disclosed in his mortgage application, the mortgage lender sought constructive service by publication and obtained a default judgment order. *Brown*, 74 Ill. App. 3d 903, 393 N.E.2d at 576. Months later, Ronald Brown petitioned to quash service and vacate the judgment order, because he did not reside with Vivian Pittman, he did not reside at the mortgaged property on

15

January 7, 1976, he could have been found through his divorce attorney or his employer, and he had not been personally served. *Brown*, 74 Ill. App. 3d at 904-05, 393 N.E.2d at 577. The appellate court found that Ronald Brown presented "a significant issue with respect to the truthfulness of the affidavit filed by the plaintiff's attorney for service by publication" (*Brown*, 74 Ill. App. 3d at 907, 393 N.E.2d at 579), and that under the circumstances, there should have been an evidentiary hearing, with the burden of proof on the plaintiff mortgage lender to establish that due inquiry was made to locate Ronald Brown. *Brown*, 74 Ill. App. 3d at 907-08, 393 N.E.2d at 579. We find the circumstances are analogous to *Brown*'s and that an evidentiary hearing is warranted here.

Having found that there is an unresolved question as to whether Equity Residential made the due and diligent inquiry required of a plaintiff intending to rely on constructive service and that an evidentiary hearing on that issue is warranted, we need not reach Nasolo's additional contentions that posting in one part of Cook County instead of another part of Cook County was ineffective, that posting at the County Building and Chicago's City Hall amounted to posting in one public place rather than two, or that pending claims for back rent, attorney fees, and costs meant the order for possession could not enforced.

The order denying Nasolo's motion to quash service and vacate the default judgment order for possession was in error and is now vacated. The cause is remanded for further proceedings consistent with this order.

Order vacated and cause remanded; appellee's motion taken with the case denied.

CAHILL, P.J. and GORDON, J., concur.

16