2024 IL App (1st) 230281-U

SECOND DIVISION
May 14, 2024

No. 1-23-0281

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| PMIT REI 2021-A LLC, | ) Appeal from the<br>) Circuit Court of<br>) Cook County. |
| Plaintiff-Appellee, | ) |
| v. | ) |
| BARBARA J. BELL, | ) No. 20 CH 5484 |
| Defendant-Appellant, | ) |
| and | ) |
| CITY OF CHICAGO, STATE OF ILLINOIS DEPARTMENT OF REVENUE, ALLY BANK, UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) <br>) <br>) <br>) Honorable<br>) Lynn Weaver Boyle, |
| Defendants. | ) Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the judgment of the circuit court. The circuit court did not err when it denied defendant's motion to quash service of process.

¶ 2 Plaintiff[1] filed a complaint to foreclose a mortgage after defendant allegedly defaulted on her obligation to pay. Plaintiff made several attempts to personally serve defendant with process but was unable to do so. Plaintiff filed an affidavit with the circuit court seeking authorization to serve defendant by publication. Defendant was served by publication, and a default judgment was entered against her when she failed to appear in the case.

¶ 3 The property was later sold in a judicial foreclosure sale, and plaintiff filed a motion to confirm the sale. On the day before the hearing on the motion to confirm the sale, defendant appeared for the first time and moved to quash service of process. After full briefing on the issue, the trial court denied defendant's motion to quash service. Defendant then responded to plaintiff's motion to confirm the foreclosure sale, but the trial court ultimately granted plaintiff's motion to confirm the sale. Defendant now appeals, arguing that the trial court erred when it denied her motion to quash service. Finding no reversible error, we affirm.

¶ 4                                          BACKGROUND

¶ 5 On July 25, 2005, defendant Barbara J. Bell executed a mortgage in favor of Standard Bank & Trust Company. The mortgage was executed to secure a loan that Standard Bank made to defendant. Plaintiff PMIT REI 2021-A LLC is the current owner of the note evidencing defendant's indebtedness which is secured by the mortgage Bell executed. On August 1, 2018, Bell executed a loan modification agreement, and she then allegedly defaulted on the terms of her modified loan as a result of nonpayment. On August 21, 2020, plaintiff filed suit to foreclose the mortgage.

---

[1] The original plaintiff in the case was UMB Bank. Plaintiff PMIT REI 2021-A LLC is UMB Bank's successor-in-interest and was substituted as plaintiff during the course of these proceedings. To avoid confusion on the service of process issue, we will refer to both companies as "plaintiff" because as far as service is concerned the actions taken by UMB Bank are imputed to the current plaintiff.

¶ 6     Plaintiff then set out to serve process on defendant. Plaintiff attempted to personally serve defendant at the address of the mortgaged property, which was believed to be defendant's principal place of residence. According to an affidavit from the special process server, plaintiff attempted to serve defendant 12 separate times at the property address between December 10, 2020 and December 21, 2020.

¶ 7     In an affidavit, the special process server detailed his efforts to serve defendant, and he included his observations of the property when he attempted service. For example, on his first attempt at service, on December 10, 2020 at 6:12 a.m., the special process server noted that the utilities at the property were on, the lights were turned on inside the home, but there was no answer at the door. On his third attempt at service, on December 12, 2020 at 6:55 p.m., the special process server noted that lights were on inside the property, but there was no answer at the door. He left a business card outside the home during that visit. The next morning, on December 13, 2020 at 7:46 a.m., the special process server noted that the business card was gone, but no one answered the door again. On December 14, 2020, the special process server went to the home at 7:10 p.m. and observed lights on in the basement, but no one answered the door. The special process server attempted service at varying times of the day with attempts made early in the morning, such as at 6 a.m. and 7 a.m., in the early and late afternoon, such as at 1:00 p.m., 3:00 p.m., and 4 p.m., and in the evening, such as at 7 p.m. and 8:30 p.m.

¶ 8     Following the inability to serve defendant at the subject address, plaintiff undertook further efforts to locate defendant, according to an affidavit filed by Erin Bitz, a skip trace investigator. Bitz found only the subject property as defendant's probable principal residence. Bitz searched an employment database, telephone directory assistance, motor vehicle division records, voter registration records, prison records, post office records, among many other

databases to find other information about where defendant could be potentially located and served. Bitz also detailed that she searched for defendant in the Cook County Court records, LinkedIn, Facebook, and Google. In those places, again, no information was found to alter the assumption that defendant lived at the subject address, and no information was gained about any potential alternative places where defendant could be located or served.

¶ 9    Bitz also detailed in her affidavit that she made two phone calls to defendant following the inability to effectuate personal service. On December 23, 2020, Bitz avers that she called defendant and there was no answer, but the voice mailbox identified the recipient of the call as "Barbara." On January 4, 2021, Bitz called defendant again. Bitz avers that defendant answered the phone on that occasion and said, "I'm in the hospital," and then refused to provide any other information before disconnecting the call.

¶ 10    Following those efforts at personal service, plaintiff filed an affidavit to serve defendant by publication. In support, Bitz submitted a separate affidavit in which she avers that defendant "resides or has gone out of the State of Illinois, or on due inquiry cannot be found, or is concealed within the State of Illinois, so that no process can be served on [her]." The clerk of the circuit court mailed a copy of the affidavit for service by publication to defendant's address. On January 11, 18, and 25 of 2021, the notice of this lawsuit was published in the Chicago Daily Law Bulletin. The notice was also placed on the statewide public notice website, as required by statute.

¶ 11    Defendant did not appear or file a responsive pleading and a default judgment was entered against her on April 20, 2022. Notice of the motion for default was sent to defendant at the property address. The circuit court entered a judgment of foreclosure and ordered the property to be sold to satisfy the outstanding indebtedness. The property was not redeemed by

defendant within the time allowed by statute, and a foreclosure sale was set for July 22, 2022. Notice of the foreclosure sale was sent to defendant at the property address. At the foreclosure sale on July 22, 2022, plaintiff purchased the property for roughly the amount of the outstanding indebtedness, $383,000. Plaintiff moved in the circuit court to confirm the sale. Notice of the motion for the confirmation of the sale was sent to defendant at the property address.

¶ 12    On September 6, 2022, one day before the hearing on plaintiff's motion to confirm the sale, defendant appeared in the case through counsel and moved to quash service of process. Defendant admitted in her motion to quash that she lived at the subject property during the times plaintiff attempted service. However, defendant submitted her own affidavit in which she avers that she was ill during the time the special process server was attempting to serve her, and she was receiving treatment both at home and in the hospital during that time period. Defendant attached some medical records to her motion to quash service to show the dates she received medical treatments. Defendant also avers that she is infirm and suffers from various conditions, and that she is afraid to open the door for strangers when it is dark outside. She further states that the person who called her on the phone did not identify herself as a process server.

¶ 13    Following full briefing, the trial court denied defendant's motion to quash service. The trial court gave defendant an opportunity to respond to plaintiff's motion to confirm the sale of the subject property. Following full briefing, the trial court granted plaintiff's motion to confirm the foreclosure sale which disposed of the case. Defendant filed this appeal.

¶ 14                                    ANALYSIS

¶ 15    On appeal, defendant argues that the circuit court did not obtain personal jurisdiction over her. Principally, defendant argues that plaintiff did not meet the statutory requirements for serving her by publication. She also argues that the final attempt at personal service was too far

removed from the time at which plaintiff moved to serve her by publication. Alternatively, defendant argues that the circuit court should have conducted an evidentiary hearing on the motion to quash service. Defendant maintains that "the circuit court erred when it denied Defendant's motion to quash service of process and when it granted Plaintiff's motion for an order approving [the foreclosure] sale, which flowed from the judgment that was entered without personal jurisdiction over the Defendant." Defendant asks that we reverse the circuit court's decision.

¶ 16    The parties agree that our review of the issues in this case is *de novo*. See *Deephaven Mortgage LLC v. Jones*, 2020 IL App (1st) 191468, ¶ 32 (a motion to quash service decided on the papers alone is subject to *de novo* review); *Illinois Service Federal Savings & Loan Ass'n of Chicago v. Manley*, 2015 IL App (1st) 143089, ¶ 17 (whether the circuit court obtained personal jurisdiction of a defendant is reviewed *de novo*).

¶ 17    In order to enter a valid judgment, the circuit court must obtain personal jurisdiction over the parties. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). The circuit court acquires personal jurisdiction over a defendant either: (1) by the defendant filing an appearance in the case, or (2) by service of process being effected upon the defendant as directed by statute. *Id.* The purpose of service of process is twofold as it serves the purpose of giving notice to those whose rights are about to be affected by the plaintiff's action, and it also vests jurisdiction in the court over the person whose rights are to be affected by the litigation. *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31 (2006).

¶ 18    Service by publication is governed by section 2-206 of the Code of Civil Procedure, which sets forth the circumstances under which a plaintiff can serve a defendant by publication.

"Whenever, in any action affecting property or status within the jurisdiction of the court, *** the plaintiff or his or her attorney shall file, at the office of the clerk of the court in which the action is pending, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained." 735 ILCS 5/2-206(a) (West 2022).

The statutory prerequisites for service by publication, including due diligence and due inquiry, must be strictly complied with in order for a court to obtain jurisdiction over a defendant. *BankUnited v. Velcich*, 2015 IL App (1st) 132070, ¶ 30; *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438, ¶ 27. The law requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as the circumstances can permit. *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 18. However, "service by publication will only be overturned where plaintiff's efforts to discover a defendant's whereabouts are 'casual, routine, or spiritless.' " *Deephaven Mortgage LLC*, 2020 IL App (1st) 191468, ¶ 55.

¶ 19    We first address the issue of waiver raised by plaintiff. Plaintiff argues that defendant waived any error the trial court may have made in finding it had personal jurisdiction and in ruling on the motion to quash service because defendant filed a response to the motion to confirm the foreclosure sale. Plaintiff argues that, when defendant filed the response, she waived any error in the court's ruling. Plaintiff relies on section 301(c) of the Code of Civil Procedure which provides that an "[e]rror in ruling against the objecting party on the objection [to personal

jurisdiction] is waived by the party's taking part in further proceedings unless the objection is on the ground that the party is not amenable to process issued by a court of this State." 735 ILCS 5/2-301(c) (West 2022). However, our supreme court has interpreted section 301(c) and "reaffirm[ed] the longstanding rule that a party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 43 (quoting *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989) (internal quotation marks omitted)). The supreme court in *Mitchell* further held that, "[t]o the extent that Illinois appellate court decisions, including *Marzano* and *Flores*, hold to the contrary, they are overruled." *Id*.

¶ 20    Therefore, we reject plaintiff's argument that defendant waived its objection to personal jurisdiction and service of process. Defendant is entitled to maintain her arguments that the trial court did not have jurisdiction when it entered the orders of default and the judgment of foreclosure and sale because her participation did not waive jurisdiction retroactively. *Id.*

¶ 21    Defendant acknowledges that the property address was her usual place of abode and was the appropriate place for plaintiff to attempt service. Defendant, however, argues that Bitz's statement, made in her affidavit submitted in support of serving defendant by publication, that defendant could not be found or was concealed within the State of Illinois was not supported by the facts. Defendant maintains that she was not concealed within the State—she was undergoing medical treatment both at her home and in the hospital.

¶ 22    According to the affidavits, plaintiff attempted to serve defendant at the property address 12 times. The special process server's affidavit includes details that indicate defendant was not amenable to being personally served at the property. For instance, the special process server indicated that he left a business card at defendant's home and, when he returned approximately

12 hours later, the card was gone. Sometimes lights were on in the house, and different lights were on at different times, but the door was never answered. The special process server went to the house variably in the morning, the afternoon, and the evening, but no one answered the door at any time of day.

¶ 23    We find plaintiff has demonstrated that it strictly complied with the statute for service by publication. Defendant's primary point in arguing that plaintiff failed to strictly comply with the statute is her position that plaintiff failed to conduct the "due inquiry" required for service by publication. However, plaintiff set out through a series of affidavits the substantial inquiry it made to locate and serve defendant.

¶ 24    After it became evident that plaintiff was not able to serve defendant by appearing at her door, plaintiff undertook an extensive public records search to see if defendant might be located elsewhere. The special process server then called defendant two times on the phone. When defendant answered the phone the second time that she was called by the process server, defendant stated that she was in the hospital but then refused to provide any more information and hung up the phone. Defendant was then served by publication and many notices were sent to her at the address she acknowledges to be her home address.

¶ 25    The individual circumstances here indicate that plaintiff conducted an honest and well-directed effort to locate and serve defendant. The special process server made uncontradicted observations that the property appeared to be occupied during the period he attempted service, and defendant admits she was in the home during that period. Despite the lack of foundation for defendant's hospital records, if we did consider defendant's hospital records, they show defendant was in the hospital on only two of the twelve days plaintiff attempted service. According to the record, defendant occupied the home except on the dates she was in the hospital

and regularly allowed a physical therapist to enter the home during that period to provide services. Defendant claims she was in regular communication with the mortgage company about "trying to settle this case amicably." Defendant does not refute any of the attestations made by the two individuals tasked with locating and serving her. Defendant likewise does not offer any admissible evidence to show that she could have been located and served had plaintiff done anything differently.

¶ 26    Defendant contends that plaintiff was required to make additional attempts at service after speaking to defendant on the phone and learning she had been ill, and that the failure to do so is the definition of perfunctory performance that should result in the service by publication being quashed. We disagree that plaintiff was required to take that precise course of action to have satisfactorily performed the due inquiry requirement. Based on the totality of plaintiff's efforts, we find it conducted a due inquiry into defendant's location.

¶ 27    The statute for service by publication does not require a plaintiff to act perfectly by making all possible inquiries and exhausting all possible means by which to serve a defendant. See *JPMorgan Chase Bank, National Ass'n v. Ivanov*, 2014 IL App (1st) 133553, ¶ 55 ("the law does not require a specific number of attempts or unduly exhaustive efforts to locate the whereabouts of a defendant."). Rather, a plaintiff must show that it performed a "due inquiry" which has been defined as an honest and well-directed effort to locate and serve the defendant. *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006). Plaintiff's efforts in this case were not casual, routine, or spiritless—the efforts were real and significant attempts at service, specifically designed and intended to find and serve defendant. See *Neighborhood Lending Services, Inc. v. Griffin*, 2018 IL App (1st) 162855, ¶ 21.

¶ 28    As stated above, it is the particular circumstances of this case that establish service by publication was permitted here. Defendant's own admissions and the evidence she submitted, coupled with the efforts taken and the observations made by plaintiff's special process server, showed that attempts at personal service at defendant's address would not achieve results. *Household Finance Corp., III v. Volpert*, 227 Ill. App. 3d 453, 455 (1992). After all attempts at personal service were unsuccessful, plaintiff undertook an extensive records search to find if there may be somewhere else to locate and serve defendant, but the search resulted in no leads. Plaintiff then tried contacting defendant by phone, but that method was unsuccessful as well because defendant refused to provide any information and hung up. Following those honest and well-directed efforts, plaintiff applied to the court to serve defendant by publication. Plaintiff strictly complied with the statute and the trial court correctly denied defendant's motion to quash service.

¶ 29    As an analogous or applicable case, defendant relies on *Cotton*, 2012 IL App (1st) 102438 to argue that the motion to quash service should have been granted here. In *Cotton*, the plaintiff made what appeared to be, at first glance, a diligent inquiry by attempting to serve the defendant personally 19 times at two different locations. *Id.* at ¶ 27. However, when the defendant filed an affidavit while contesting personal jurisdiction, we observed that the defendant raised serious, legitimate questions about the truthfulness of the process servers' affidavits. *Id.* at ¶¶ 28-31. The defendant, therefore, had created a question of fact regarding the credibility and reliability of the process servers' affidavits. Thus, we explained that "if the defendant is able to present a significant issue with respect to the truthfulness of the affidavit filed by the plaintiff's agent for service by publication, then the trial court should hold an evidentiary hearing on the issue with the burden of proof being upon the plaintiff to establish that

due inquiry was made to locate the defendant." *Id*. at ¶ 18 (citing *First Federal Savings & Loan Association v. Brown,* 74 Ill. App. 3d 901, 907-08 (1979)).

¶ 30     The circumstances and reasoning we applied in *Cotton* are not applicable to this case. Defendant does not make any attestations in her affidavit that conflict with or call into question the veracity of any of the attestations made by the individuals tasked with locating and serving her. Indeed, the statements in defendant's affidavit and the records she attached to her motion to quash service actually tend to corroborate much of what plaintiff's affiants stated in their affidavits.

¶ 31     Contrary to the nonapplicability of *Cotton*, a case relied upon by plaintiff is more factually analogous and is persuasive to our determination. In *Volpert*, 227 Ill. App. 3d at 455, the plaintiff knew the defendant's probable residence and attempted to serve the defendant there 11 times over a two-month period. The process server memorialized observations about the appearance of the defendant's home, such as, "lights on—car in drive—won't answer door." *Id*. The process server averred that he made repeated attempts during the day, night, and weekend, but he was unable to serve the defendant. *Id.* The process server indicated that, "although the house appeared occupied, no one answered the door." We found the plaintiff's efforts to have established "due inquiry" for purposes of serving the defendant by publication, albeit under a different standard of review. *Id*. at 454-56.

¶ 32     Like the affidavits submitted to the court in *Volpert*, the affidavits here demonstrate that plaintiff was unable to serve defendant despite knowing her primary residence because no one answered the door. Here, ultimately, plaintiff has made the required showing that process could not personally be served on defendant. Plaintiff made a dozen attempts to serve defendant at her home but could not make contact with her, even though the special process server's observations

and defendant's admissions indicated someone was home. In such a situation, due inquiry may be found. See *id.*; see also *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶¶ 33-34; *Griffin*, 2018 IL App (1st) 162855, ¶¶ 20-23.

¶ 33    Defendant contends that the length of time between plaintiff's last service on attempt on December 21, 2020 and the date it filed the affidavit for service by publication on January 6, 2021 made the affidavit stale (citing *Bank of N.Y Mellon v. Karbowski*, 2014 IL App (1st) 130112). Defendant argues that the 17-day period between the last service attempt and the affidavit for service by publication constituted an unreasonable lapse of time such that plaintiff has not demonstrated due diligence in service.

¶ 34    Defendant's argument, however, fails to adequately account for the efforts plaintiff was making towards locating defendant even after the last time plaintiff had a process server go to defendant's residence. After attempting to serve defendant 12 times personally at her home, plaintiff's skip trace investigator undertook an investigation to determine where else defendant might be located. The final attempt to serve defendant personally was made on December 21, 2020. The skip trace investigator, Bitz, called defendant on December 23, 2020 and on January 4, 2021. She searched numerous databases attempting to locate defendant. At the completion of that investigation, on January 4, 2021, Bitz executed her affidavit averring that defendant could not be found. Plaintiff filed its motion for service by publication on January 6, 2021—just two days later.

¶ 35    In *Karbowski*, we discussed that situations might arise where a substantial period of time between the efforts to locate the defendant and the filing of the motion to serve by publication may result in the plaintiff being unable to establish the due diligence required by the statute. *Id.* at ¶ 18. Such is not the case here. Defendant has failed to demonstrate that this case is in any way

analogous to the cases she relies upon for her argument that the affidavit was executed after an unreasonable lapse in time, and she has otherwise failed to demonstrate that the affidavit was untimely or stale.

¶ 36    Alternatively, defendant argues that the trial court should have held an evidentiary hearing on her motion to quash service rather than ruling on the documentary evidence submitted. Defendant contends that the trial court should have ordered an evidentiary hearing to resolve disputes about the content of the phone calls made by Bitz to defendant on December 23, 2020 and January 4, 2021. Defendant maintains that the court should have held the evidentiary hearing to determine what information plaintiff's process server gave defendant, if any, in a voicemail during the first phone call and to determine the content of the second phone call. Defendant points to her affidavit filed in support of her motion to quash service in which she avers that the person on the phone did not identify herself as a process server.

¶ 37    In making the argument that an evidentiary hearing was required, defendants relies on authorities that interpret a prior version of the statute in which we explained that "[i]f the plaintiff's documentary evidence, including affidavits and depositions, contradicts the defendant's evidence on issues of fact that will determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence." *Femal v. Square D Co.*, 388 Ill. App. 3d 134, 141 (2009) (quoting *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523 (1998)). The statute was amended in 2000 and currently provides that, "[i]n disposing of a motion objecting to the court's jurisdiction over the person of the objecting party, the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact." 735 ILCS 5/2-301(b) (West 2022).

¶ 38     In our view, defendant has failed to identify any contested factual dispute between her affidavit and the affidavits submitted by plaintiff's special process servers which would require an evidentiary hearing under either version of the statute. Defendant has not, as in *Cotton*, provided attestations and evidence that contradict or call into question the affidavits submitted by the special process servers. See *supra* ¶¶ 26-27; *Cotton*, 2012 IL App (1st) 102438, ¶¶ 28-29. In fact, defendant's affidavit corroborates statements made in the special process servers' affidavits.

¶ 39     The exact information the process server gave defendant over the phone was not material to the trial court's decision, and defendant did not raise any question about the content of those calls in her affidavit. There was likewise no material factual dispute created by defendant's statement that the person who called did not identify herself as a process server. Plaintiff's affiants never claimed to have identified themselves to defendant and it was not necessary for them to have done so in order for due inquiry to be found under the service by publication statute. The trial court did not err when it rejected defendant's request for an evidentiary hearing, as the trial court was entitled to rule on the documentary evidence alone.

¶ 40                                    CONCLUSION

¶ 41     Accordingly, we affirm.

¶ 42     Affirmed.