JOHN WHITE *et al.*, Plaintiffs-Appellees, v. ROBERT RATCLIFFE III, Defendant-Appellant (Farrell Michael Putman, Defendant).

Second District    No. 2—96—0213

Opinion filed December 19, 1996.

Robert J. Fox, of Ori, Fox, Lunardi & Zeit, and James A. Borrasso, both of Waukegan, for appellant.

Stephen D. Sharp, of Chicago, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Robert Ratcliffe III, appeals from the January 17, 1996, order of the circuit court of Lake County denying his petition to vacate a default judgment pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1994)). Ratcliffe, a resident of London, England, argues that the trial court lacked jurisdiction to enter the default judgment because he was not served process in a manner authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention). We affirm.

On September 23, 1993, the plaintiffs, John White and Barbara White, filed a conversion action in the circuit court of Lake County, alleging that the defendants, Ratcliffe and Farrell Michael Putman, burglarized their home in December 1989. On November 15, 1993, the plaintiffs filed an amended complaint, containing the same allegations.

Also on November 15, 1993, summons issued on the amended complaint. On November 24, 1993, Putman was served, and on January 7, 1994, an appearance was filed on his behalf.

On November 16, 1993, in an attempt to serve Ratcliffe, the plaintiffs' attorney mailed the summons and a copy of the amended complaint via international registered mail to Ratcliffe's last known address, 7 King Frederick IX Towers, Finland Street, Surrey Quays, London, England, SE161TH. The plaintiffs' attorney subsequently received a return receipt indicating that the documents were received and signed for by "V. Ratcliffe." Although the return receipt did not specify the date of delivery, the postmark was dated December 16, 1993.

On or about December 16, 1993, Ratcliffe telephoned the plaintiffs' attorney and stated that he would be visiting Illinois before the end of 1993 and that he would retain a lawyer to defend the action at that time. No appearance, however, was filed on the defendant's behalf during the remainder of 1993. On January 6, 1994, the plaintiffs' attorney wrote Ratcliffe to advise him that a default would be entered against him at the January 19, 1994, status hearing if no appearance was filed before that time. In response to the letter, Ratcliffe telephoned the plaintiffs' attorney and stated that he was not hiring an attorney and that he would file a *pro se* appearance and answer.

At the January 19, 1994, status hearing, the plaintiffs' attorney advised the trial court that he had been in contact with Ratcliffe and that it was Ratcliffe's intention to file a *pro se* appearance and answer. The trial court continued the case to April 13, 1994, for another status hearing. On February 11, 1994, the plaintiffs' attorney again wrote to Ratcliffe, advising him that if he failed to file an appearance prior to the April 13, 1994, status hearing, a default would be entered against him. Ratcliffe, however, took no action to defend the case.

On April 13, 1994, the trial court entered a default against Ratcliffe and set the case for prove up on June 13, 1994. On April 13, 1994, the plaintiffs' attorney sent copies of the default order via both international registered mail and regular airmail. The plaintiffs' attorney also sent a letter advising Ratcliffe that if he desired to defend the case he would have to file a motion to vacate the default judgment as soon as possible. Ratcliffe again took no action to defend the case.

In order to avoid any potential future attack by Ratcliffe on service of process, the plaintiffs' attorney requested that the default judgment entered against Ratcliffe be vacated. The plaintiffs' attorney then proceeded to serve Ratcliffe again using the following alternate methods: On June 13, 1994, another alias summons was issued. The plaintiffs' attorney then retained an English process server through a London solicitor. The process server attempted personal service several times in June and July, but was unsuccessful; in the process, however, Ratcliffe was alerted to these attempts to effect service on him. On July 14, 1994, Ratcliffe telephoned the plaintiffs' attorney to reiterate that he would be filing a *pro se* appearance and answer.

On August 25, 1994, another alias summons was issued. The plaintiffs' attorney then requested that the trial court issue an official "Request for Service Abroad of Judicial or Extrajudicial Documents" as required for service made pursuant to the Hague Conven-

tion. These materials were sent via overnight Federal Express International Delivery to the office of Her Majesty's Principal Secretary of State for Foreign Affairs (the English Central Authority). On October 20, 1994, the English Central Authority proceeded to serve Ratcliffe the alias summons and amended complaint.

On December 6, 1994, another alias summons was issued. This alias summons was forwarded via overnight Federal Express International Delivery to Karen Beer, an English process server. On December 16, 1994, Beer personally served the alias summons and amended complaint upon Ratcliffe. Beer made the following sworn statements in the return of service:

"1. I am a person authorized under the Laws of England to serve process issued through the Courts of England and elsewhere.

2. On Friday the 16th day of December 1994 at 0830 hours at 7 King Frederick IX Towers, Finland Street, Surrey Quays, London SE161TH, England, I personally served Robert Ratcliffe III with the Summons issued in this action *** bearing date the 6th day of December 1994, *** said Summons[ ] being accompanied by a copy of the Amended Complaint and Jury Demand filed herein on the 15th day of November 1993.

3. At the time of service the [ ] Defendant Robert Ratcliffe III admitted his identity to me and read the proceedings served upon him."

Ratcliffe again took no action to defend the case.

On January 19, 1995, the plaintiffs filed a motion for entry of a default judgment. On January 25, 1995, the trial court entered a default judgment against the defendant and set the matter for prove up on March 6, 1995. At the prove up, the trial court heard the testimony of defendant Putman. Putman testified that Ratcliffe had planned and carried out the burglary. At the completion of Putman's testimony, the trial court entered judgment against Ratcliffe in the amount of $130,060.29. Thereafter, the action against Putman was dismissed without prejudice.

On November 1, 1995, Ratcliffe filed a special and limited appearance and a section 2—1401 petition to vacate the default judgment (see 735 ILCS 5/2—1401 (West 1994)). Ratcliffe made the following arguments in the petition: (1) that the service of the August 25, 1994, alias summons by the English Central Authority was invalid because it was not completed within the 30-day period during which the summons was valid; (2) that the service of the December 6, 1994, alias summons by Beer was invalid because the Hague Convention does not permit service by an independent process server; (3) that the August 25, 1994, alias summons served through the English Central

Authority was invalid because it was not served in duplicate as required by article 3 of the Hague Convention; and (4) that the default judgment was entered in violation of article 15 of the Hague Convention, which requires a six-month waiting period between service of process and the entry of a default judgment.

The plaintiffs filed a verified answer to Ratcliffe's petition, supported by 48 pages of exhibits documenting the service attempts detailed above. The plaintiffs argued (1) that Ratcliffe had been properly served by international mail, as permitted by article 10(a) of the Hague Convention; (2) that Ratcliffe was personally served by Beer, as permitted by article 10(c) of the Convention; (3) that the Hague Convention does not require duplicate service of the documents; (4) that the six-month period required by article 15 of the Hague Convention applies only in those instances where there has been no return of service; and (5) that the trial court could not vacate the default judgment pursuant to article 16 of the Hague Convention, because Ratcliffe had been given sufficient time to defend the action. Alternatively, the plaintiffs filed a motion to extend the 30-day time period during which the English Central Authority could serve the August 25, 1994, alias summons.

On January 17, 1996, the trial court denied Ratcliffe's section 2—1401 petition to vacate the default judgment. Ratcliffe filed a timely notice of appeal.

■ Section 2—1401 of the Code of Civil Procedure provides a mechanism by which a final judgment may be vacated. 735 ILCS 5/2—1401 (West 1994). In order to obtain relief from a default judgment pursuant to section 2—1401, the moving party must show (1) that he has a meritorious defense to the action; (2) that he has exercised due diligence in presenting such a defense to the trial court; and (3) that he has exercised due diligence in filing a petition pursuant to section 2—1401. *Halle v. Robertson*, 219 Ill. App. 3d 564, 568 (1991).

■ ■ Generally, a section 2—1401 motion to vacate a default judgment is addressed to the sound discretion of the trial court, and its denial will be reversed only if the trial court abused its discretion. *Sterne v. Forrest*, 145 Ill. App. 3d 268, 277 (1986). In the instant case, however, Ratcliffe's section 2—1401 petition challenges the jurisdiction of the trial court and argues that he was not served process in a manner authorized by the Hague Convention. Proper service of summons is a prerequisite for obtaining *in personam* jurisdiction over a party, and a judgment entered without proper service is void *ab initio* for lack of jurisdiction over a defendant. *Meldoc Properties v. Prezell*, 158 Ill. App. 3d 212, 215 (1987). Indeed, a judgment entered

without proper service of process is void even if the party against whom a judgment is entered had notice of the proceedings. *State Bank v. Thill*, 113 Ill. 2d 294, 308-09 (1986). Since the issue of whether a trial court has personal jurisdiction over a party is a question of law, we will review the instant case *de novo*. See *State Bank*, 113 Ill. 2d at 308-09.

■ The plaintiffs initially argue that a number of the issues raised in Ratcliffe's appellate brief are presented for the first time on appeal. A review of these issues, however, reveals that they are merely an elaboration on the challenges to service raised in Ratcliffe's section 2—1401 petition. As already noted, a challenge to service of process is a challenge to the jurisdiction of the court. *Meldoc Properties*, 158 Ill. App. 3d at 215. Ratcliffe properly preserved his objection to the trial court's jurisdiction by filing a special and limited appearance and then by filing his section 2—1401 petition to vacate within the time permitted by law. See 735 ILCS 5/2—1401 (West 1994); *R.W. Sawant & Co. v. Allied Programs Corp.*, 130 Ill. App. 3d 71, 74 (1984). Additionally, we note that a party may object to the trial court's personal jurisdiction at any time. *R.W. Sawant & Co.*, 130 Ill. App. 3d at 74. Accordingly, we will consider all of Ratcliffe's jurisdictional arguments relating to the service of process in the instant case.

Our review of the record reveals that Ratcliffe received a copy of the summons and amended complaint on three separate occasions. On December 16, 1993, he received an alias summons and a copy of the amended complaint via international registered mail; on October 20, 1994, he was served with an alias summons and a copy of the amended complaint by the English Central Authority; and on December 16, 1994, he was served an alias summons and a copy of the amended complaint by process server Beer.

■ Ratcliffe argues that the service attempts made through international registered mail and the English Central Authority were invalid because, in each instance, he did not receive the alias summons within 30 days of its issue. Supreme Court Rule 102(b) mandates that "[n]o summons *** may be served later than 30 days after its date." 134 Ill. 2d R. 102(b). The alias summons sent by international registered mail had an issue date of November 15, 1993, and was received by Ratcliffe on December 16, 1993. The alias summons served through the English Central Authority had an issue date of August 25, 1994, and was received by Ratcliffe on October 20, 1994.

Without reaching the merits of Ratcliffe's argument, we note that no such alleged defect existed with the alias summons served by process server Beer. That alias summons was issued on December 6,

1994, and personally served on Ratcliffe on December 16, 1994. Ratcliffe, therefore, was served the alias summons and amended complaint within 30 days of its December 6, 1994, issue as required by Rule 102(b).

Ratcliffe argues that the Hague Convention does not permit personal service by an independent process server and, instead, requires all service of process to be made through the English Central Authority. Ratcliffe therefore argues that the December 6, 1994, alias summons personally served by Beer on December 16, 1994, was improper and thus ineffective to invoke the trial court's jurisdiction. The plaintiffs respond by arguing that article 10(c) of the Hague Convention expressly permits the service of judicial documents directly through independent process servers in England.

■ The Hague Convention is a multinational treaty, which was first drafted in 1965, for the purpose of creating an appropriate means "to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." Hague Convention, November 15, 1965, preamble, 20 U.S.T. 361, 362, T.I.A.S. No. 6638 (reprinted in 28 U.S.C.A. Fed. R. Civ. P. 4, at 210 (West 1992)) (hereinafter 28 U.S.C.A. Fed. R. Civ. P.). Both the United States and England are signatories to the Hague Convention. 28 U.S.C.A. Fed. R. Civ. P. 4, Note C4-46, at 122 (West Supp. 1996). The Hague Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 28 U.S.C.A. Fed. R. Civ. P. 4, at 210. By virtue of the Supremacy Clause, the Hague Convention applies to the service of process in the instant case and preempts any inconsistent methods of service permitted by Illinois law. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 100 L. Ed. 2d 722, 730, 108 S. Ct. 2104, 2108 (1988).

The Hague Convention sets out specific procedures for accomplishing foreign service of process. Articles 2 through 6 of the Convention permit service via the "Central Authority" designated by the country in which service is to be made. 28 U.S.C.A. Fed. R. Civ. P. 4, at 210-11. Although the Central Authority is always to be made available as a means to effectuate service, its use is not compulsory, and other methods of service are provided in the remaining articles of the Convention. *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir. 1986). For example, article 8 permits each contracting state "to effect service of judicial documents upon persons abroad *** directly through its diplomatic or consular agents." 28 U.S.C.A. Fed. R. Civ. P. 4, at 211. Also, article 10(a) permits the service of judicial documents "by postal channels" as long as the country where service is to be made does not object. 28 U.S.C.A. Fed. R. Civ. P. 4, at 212.

■ The relevant articles of the Hague Convention necessary to resolve the instant case are articles 19 and 10(c). Article 19 expressly permits service of process by any method of service allowed by "the internal law of the contracting State." 28 U.S.C.A. Fed. R. Civ. P. 4, at 213; *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173 (8th Cir. 1989). Under article 19, any method of service will be deemed effective as long as there is nothing contained in the foreign nation's law, either explicitly or by compelling implication, to suggest that the method violates some deep-rooted policy of the nation involved. 28 U.S.C.A. Fed. R. Civ. P. 4, Note C4-24, at 65 (West Supp. 1996).

Our review of English civil practice and procedure reveals that the use of an independent process server is permitted in order to effectuate service of process. Order 10 of the Rules of the Supreme Court of England expressly requires that a defendant must be personally served process commencing a lawsuit. Rules of the Supreme Court of England, Order 10, Rules 1, 5. Such personal service may be accomplished by employing a process server to leave a copy of the document with the person to be served. Rules of the Supreme Court of England, Order 65, R. 2. Since the use of an independent process server is expressly permitted under English law, such a method of service would likewise be effective herein pursuant to article 19 of the Hague Convention.

The use of an independent process server is also permitted under article 10(c) of the Convention. Article 10(c) provides, in pertinent part:

> "Provided the State of destination does not object, the present Convention shall not interfere with—
>
> * * *
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." 28 U.S.C.A. Fed. R. Civ. P. 4, at 212.

Subparagraph (c) delineates three categories of persons who are permitted to serve process: (1) judicial officers; (2) officials; and (3) other competent persons. Therefore, provided that the contracting country does not object, a foreign plaintiff would be permitted to utilize any individual within one of these three categories to effectuate service of process. An independent process server authorized by English law to serve process falls within the category of "other competent persons" permitted to effectuate service. See *Balcom v. Hiller*, 46 Cal. App. 4th 1758, 1763-65, 54 Cal. Rptr. 2d 538, 539-40 (1996); *Vazquez v. Sund Emba AB*, 548 N.Y.S.2d 728, 729-32, 152 A.D.2d 389, 392-97 (1989).

Ratcliffe argues that the United Kingdom has expressly objected to the terms of article 10(c). Specifically, Ratcliffe relies on the following portion of the United Kingdom's ratification of the Hague Convention:

"With reference to the provisions of paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the United Kingdom only by the central or additional authorities and only from judicial consular or diplomatic officers of other Contracting States." 28 U.S.C.A. Fed. R. Civ. P. 4, at 226.

Our reading of this language does not lead us to conclude that the United Kingdom has objected to article 10(c). Instead, we believe this language was meant to be a clarification that any documents for service *through official channels* will be accepted only by the central or additional authority. The language quoted above does not disturb that portion of article 10(c) which permits the use of "other competent persons," such as private process servers, to effect service of process without the aid of the English government. We note that a similar interpretation of this language has been adopted by the California appellate court in *Balcom v. Hiller*, 46 Cal. App. 4th 1758, 1763-65, 54 Cal. Rptr. 2d 538, 539-40 (1996). We therefore reject Ratcliffe's contention that this declaration was meant to require all foreign service of process to be effected through the English Central Authority.

In light of the foregoing discussion, we conclude that English law expressly permits the use of private process servers to obtain personal service. Therefore, under either article 19 or 10(c) of the Hague Convention, the plaintiffs herein were permitted to hire an independent process server to effectuate service on Ratcliffe in the United Kingdom. Beer testified in her affidavit of service that she was "a person authorized under the Laws of England to serve process issued through the Courts of England and elsewhere." Beer testified that on December 16, 1994, she personally served Ratcliffe the December 6, 1994, alias summons and a copy of the amended complaint and jury demand. Beer also testified that Ratcliffe "admitted his identity to [her] and read the proceedings served upon him." Based on such testimony, we conclude that Ratcliffe was properly served the December 6, 1994, alias summons within 30 days of its issue. Moreover, we find that such service was made in compliance with both English law and the Hague Convention and was therefore sufficient to invoke the trial court's personal jurisdiction over Ratcliffe.

■ Ratcliffe's next argument on appeal is that, even if service was proper, the trial court lacked the authority under article 15 of the Hague Convention to enter the January 25, 1995, default judgment. Article 15 provides, in pertinent part:

"Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that—

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled—

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." 28 U.S.C.A. Fed. R. Civ. P. 4, at 212-13.

Ratcliffe argues that in the instant case the six-month waiting period required by subparagraph (b) of the second paragraph had not elapsed prior to the entry of the default order. Ratcliffe points out that personal service was made by Beer on December 16, 1994, while the default was entered January 25, 1995. This argument is without merit.

The six-month waiting period mandated by subparagraph (b) of the second paragraph applies only in those instances where "no certificate of service or delivery has been received." This was not the case herein. As discussed above, Beer provided an affidavit of service which was filed with the trial court. As the plaintiffs were able to provide a certificate of service, only the first paragraph of article 15 had to be satisfied prior to the trial court's entry of a default judgment. As cited above, that paragraph requires that, prior to the entry of a default, the trial court determine (1) that service was proper under the internal law of the country where the defendant is to be served; (2) that the document was actually delivered to the defendant; and (3) that service was effected in sufficient time for the defendant to defend.

Each of these prerequisites was satisfied in the instant case. First, as already noted, the plaintiffs' use of an independent process server to serve the alias summons and amended complaint was permitted under English law. Second, Beer's affidavit of service evidences that Ratcliffe was personally served the alias summons and amended complaint on December 16, 1994. In regard to whether Ratcliffe was served the documents in sufficient time to defend the action, we note that the default order was not entered until January 25, 1995, which was 40 days after Ratcliffe was served. This period of time was 10 days longer than the 30-day period during which a defendant is required to answer or appear. 134 Ill. 2d R. 181. Additionally, Ratcliffe had received notice of the instant lawsuit on at least two other occasions dating back to December 16, 1993. Ratcliffe has spoken with the plaintiffs' attorney on several occasions regarding the need for him to defend the action. We therefore conclude that Ratcliffe had sufficient time prior to the entry of the default judgment to defend this action. As all three requirements of the first paragraph of article 15 were satisfied, we conclude that the trial court properly entered the default judgment against Ratcliffe.

■ Ratcliffe's final argument on appeal is that the trial court violated article 16 of the Hague Convention by refusing to grant his section 2—1401 petition to vacate default judgment. Article 16 of the Hague Convention provides, in pertinent part:

"When a writ of summons *** [is] transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled:

(a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

(b) the defendant has disclosed a *prima facie* defense to the action on the merits." 28 U.S.C.A. Fed. R. Civ. P. 4, at 213.

Ratcliffe argues that at no time prior to the entry of the default judgment order did he receive notice that the plaintiffs were seeking a default judgment. Ratcliffe argues that he did not learn of the default judgment until October 1, 1995, when his father was telephoned by the plaintiffs. Ratcliffe therefore argues that under subparagraph (a) of article 16 he did not have knowledge of the default judgment in time to defend. Ratcliffe also argues that he has a *prima facie* defense to the action, as he did not take part in the burglary of the plaintiffs' residence.

Despite Ratcliffe's arguments to the contrary, we find that he has failed to demonstrate that he did not receive service of process in sufficient time to defend this action. Ratcliffe was properly served process by Beers on December 16, 1994, 40 days prior to the entry of default. The alias summons which was served on Ratcliffe expressly stated that if he failed to file an answer, or otherwise appear, within 30 days of receipt, "a judgment or decree by default may be taken against [him] for the relief prayed in the complaint." Moreover, Ratcliffe had knowledge of this suit as far back as December 16, 1993, when he received a copy of the alias summons and the amended complaint by international registered mail. Therefore, Ratcliffe's failure to defend this action or vacate the default judgment entered by the trial court was his own fault. We therefore conclude that the trial court did not abuse its discretion in denying Ratcliffe's section 2—1401 petition to vacate the default judgment.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and RATHJE, JJ., concur.