# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438**

| | |
|---|---|
| Appellate Court Caption | CITIMORTGAGE, INC., Assignee of Mortgage Electric Registration Systems, Inc., as Nominee for Irwin Mortgage Corporation, Plaintiff-Appellee, v. ERNEST J. COTTON, Defendant-Appellant (Marquette Bank, Under Mortgage Recorded as Document Number 0527147167; Solar Service, Inc., Under Mechanics Lien Recorded as Document Number 0620650042, and Under Memorandum of Judgement Recorded as Document Number 0732503162, Mildred Barnett and Berton N. Ring, P.C., Under Memorandum of Judgment Recorded as Document Number 0627622047, Lester L. Barclay, Under Memorandum of Judgment Recorded as Document Number 0834345071, Nonrecord Claimants, Unknown Tenants and Unknown Owners, Defendants). |
| District & No. | First District, Second Division<br>Docket No. 1-10-2438 |
| Filed | August 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion to vacate the judgment of foreclosure and confirmation of judicial sale and to quash service by publication was reversed and the cause was remanded for an evidentiary hearing on whether plaintiff made a diligent and due inquiry to locate defendant prior to being granted leave to serve defendant by publication, since such a hearing was warranted by the discrepancies between the parties' affidavits. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-24415; the Hon. Thomas R. Mulroy, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Berton N. Ring, P.C., of Chicago (Berton N. Ring, of counsel), for appellant. |
| | Dykema Gossett PLLC, of Chicago (Michael Gilman, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from an August 10, 2010 order entered by the circuit court of Cook County which denied defendant-appellant Ernest J. Cotton's (Ernest) motion to reconsider the denial of his motion to vacate the judgment of foreclosure and judicial sale and to quash service by publication. On appeal, Ernest argues that: (1) the circuit court lacked jurisdiction over him because the process servers were improperly appointed as a matter of law; (2) service of process was invalid because plaintiff-appellee Citimortgage, Inc. (Citimortgage), failed to conduct due inquiry in ascertaining his whereabouts; and (3) service of process is void because the affidavits of service were fraudulent and facially defective. For the following reasons, we reverse the ruling of the circuit court of Cook County and remand the matter for further proceedings.

¶ 2                         BACKGROUND

¶ 3    On August 18, 2003, Ernest entered into a mortgage contract with Irwin Mortgage Corporation that secured a $183,207 loan on a five-unit apartment building at 8429 S. Paulina Street, Chicago, Illinois (main residence). The mortgage was later assigned to Citimortgage via Mortgage Electronic Registration Systems, Inc. On May 26, 2009, Citimortgage sent Ernest a letter confirming that Matthew R. Wildermuth (Wildermuth) had been granted a power of attorney on Ernest's mortgage account. On June 2, 2009, the circuit court of Cook County appointed Amicus Legal Services, Inc. (Amicus), and its employees as special process servers until August 31, 2009 under license number 117-001465. On July

20, 2009, Citimortgage filed a complaint to foreclose the mortgage, alleging that Ernest had defaulted on the mortgage agreement. Marquette Bank held a junior mortgage on the main residence and was also listed as a defendant in addition to Ernest.

¶ 4    Between July 25, 2009 and August 9, 2009, Charles Eskra, an employee of Amicus, unsuccessfully attempted to serve Ernest 10 times at the main residence. As a result, on August 13, 2009, Charles Eskra executed an affidavit that stated that there was no evidence that the main residence was vacant, and that a neighbor named Chanel Smith did not know of any Ernest Cotton. Charles Eskra's affidavit stated that after due search, careful inquiry, and diligent attempts, he was unable to serve Ernest at the main residence. Between August 12, 2009, and August 19, 2009, Don Eskra, also an employee of Amicus, unsuccessfully attempted to serve Ernest nine times at another known address: 8324 S. Paulina Street, Chicago, Illinois (alternate residence). On August 19, 2009, the circuit court appointed Firefly Legal, Inc. (Firefly), and its employees as special process servers under license number 117-001465, the same license number that was used to appoint Amicus. On August 21, 2009, Don Eskra executed an affidavit that stated that Ernest's name was not listed on the doorbells or mailboxes of the alternate residence, and there was no evidence that the alternate residence was vacant. Don Eskra's affidavit stated that after due search, careful inquiry, and diligent attempts, he was unable to serve Ernest at the alternate residence. On August 27, 2009, Amicus executed an affidavit indicating that Ernest had not been served.

¶ 5    On August 31, 2009, Citimortgage executed an affidavit in support of its motion for service by publication which stated that: upon due inquiry, Ernest could not be found; the main residence is the residence for Ernest and unknown tenants only; the alternate residence is the residence for Ernest only; and upon diligent inquiry, the last known place of residence for nonrecord claimants and unknown owners could not be ascertained. The trial court granted Citimortgage's motion. On September 2, 9, and 16, 2009, Citimortgage served Ernest by publication in the *Chicago Daily Law Bulletin*. On September 4, 2009, the clerk of the circuit court of Cook County mailed written notices of the pending action to Ernest at the main residence and alternate residence. On September 22, 2009, Marquette Bank filed an appearance.

¶ 6    On November 19, 2009, Citimortgage mailed copies of its motions requesting an order of default against Ernest and a judgment of foreclosure and order of sale to the tenants of the main residence and alternate residence. On November 25, 2009, the circuit court entered an order of default against Ernest for failure to answer or otherwise plead. The circuit court also entered a judgment of foreclosure and order of sale as to the main residence. On February 20, 2010, Citimortgage mailed copies of the notice of sale of the main residence to the occupants of the main residence and alternate residence. On March 4, 2010, Marquette Bank purchased the main residence.

¶ 7    On March 31, 2010, Ernest filed a motion in the circuit court of Cook County to vacate the judgment of foreclosure and judicial sale and to quash service by publication. In his motion, Ernest stated that he had no prior notice of the judicial sale due to Citimortgage's failure to conduct due diligence and reasonable inquiry. The motion also stated that Ernest's affidavit was attached to the motion. However, the record on appeal does not contain an affidavit attached to the motion. On April 1, 2010, Citimortgage filed a motion for

confirmation of sale of the main residence. On May 7, 2010, Citimortgage filed a response to Ernest's motion to vacate the judgment of foreclosure and judicial sale and to quash service by publication.

¶ 8   On June 17, 2010, the trial court granted Ernest leave to file an affidavit. On June 22, 2010, Ernest filed an affidavit. In his affidavit, Ernest stated that Don Eskra incorrectly swore that Ernest's name was not listed on any of the doorbells at the alternate residence, when in fact Ernest's name appeared on two of the doorbells at the alternate residence. Ernest's affidavit also stated that Don Eskra incorrectly swore that Ernest's name was not on any of the mailboxes at the alternate residence; however, there is actually only one mailbox at the alternate residence. Ernest attached photographs of the alternate residence and affidavits of people who resided at the alternate residence to support his statements. Ernest's affidavit further stated that on August 2, 2009, one of the times that Charles Eskra swore he attempted service at the main residence, Ernest was at home at the main residence and engaged in a large birthday party which was being held in the yard of the residence. In his affidavit, Ernest claimed that the affidavits of Charles and Don Eskra (the Eskras) show a lack of due diligence in serving the summons and complaint, and that upon due inquiry, Ernest could have been located at either of his residences. Ernest also claimed that with an exercise of diligence, he could have been located through his attorney, Wildermuth, whose connection with Ernest was known by Citimortgage.

¶ 9   On June 24, 2010, the circuit court heard oral arguments on Ernest's motion to vacate the judgment of foreclosure and judicial sale and to quash service by publication. Following argument, the circuit court denied Ernest's motion and entered an order confirming the sale of the main residence. On July 19, 2010, Ernest filed a motion to reconsider the denial of the motion to quash service by publication. In addition to the arguments presented in his motion to reconsider, Ernest requested an evidentiary hearing to determine whether Citimortgage executed due diligence in attempting to find and serve him. The court refused to grant Ernest the opportunity to be heard at an evidentiary hearing and on August 10, 2010, the court denied Ernest's motion to reconsider. On August 19, 2010, Ernest filed a notice of appeal.

¶ 10   ANALYSIS

¶ 11   On August 10, 2010, the trial court entered a final order denying Ernest's motion to reconsider. On August, 19, 2010, Ernest filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 303(a) (eff. May 30, 2008). Therefore, we have jurisdiction to consider Ernest's arguments on appeal.

¶ 12   On appeal, Ernest presents three arguments to show that the circuit court lacked personal jurisdiction over him and, thus, the judgments entered by the circuit court were void. We first examine Ernest's argument that the service of process by publication was invalid because the process servers, Charles and Don Eskra, were improperly appointed by the circuit court. If service of process by publication is defective, then the circuit court does not have personal jurisdiction over the party that was served. *In re Marriage of Wilson*, 150 Ill. App. 3d 885, 888-89, 502 N.E.2d 447, 448-49 (1986). "[A] judgment rendered without personal jurisdiction is void regardless of whether the defendant had actual knowledge of the

-4-

proceedings." *In re Marriage of Kohl*, 334 Ill. App. 3d 867, 880, 778 N.E.2d 1169, 1180 (2002). Furthermore, a judgment that is entered without personal jurisdiction over a party can be attacked directly or collaterally at any time. *Id*. Appellate courts review *de novo* whether personal jurisdiction was conferred. *C.T.A.S.S.&U. Federal Credit Union v. Johnson*, 383 Ill. App. 3d 909, 910, 891 N.E.2d 558, 560 (2008).

¶ 13    We note that Marquette Bank filed a brief on appeal in support of Citimortgage. Marquette Bank adopted all of Citimortgage's arguments, and its additional claims are almost identical to claims made in Citimortgage's brief. Accordingly, we consider Marquette Bank and Citimortgage's arguments to be unified, and respond only to Citimortgage's arguments for the sake of convenience. Citimortgage counters Ernest's argument regarding the invalidity of the appointment of the process servers by asserting that Ernest forfeited his argument because it was raised for the first time on appeal. However, a judgment that is entered without personal jurisdiction over a party can be attacked directly or collaterally at any time. *In re Marriage of Kohl*, 334 Ill. App. 3d at 880, 778 N.E.2d at 1180. A similar factual situation was addressed by the appellate court in *White v. Ratcliffe*, 285 Ill. App. 3d 758, 674 N.E.2d 906 (1996). In *White*, the defendant filed a petition to vacate a default judgment pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 1994)). *White*, 285 Ill. App. 3d at 762, 674 N.E.2d at 910. In his petition, the defendant claimed that the service of process was invalid based on four arguments. However, on appeal, the defendant presented additional arguments in support of his petition. *Id*. at 762-64, 674 N.E.2d at 910-11. The appellate court found that the additional arguments raised on appeal were merely an elaboration of the overall challenges to service raised in the defendant's section 2-1401 petition in the trial court. *Id*. at 764, 674 N.E.2d at 911. The appellate court noted that a party may object to the trial court's jurisdiction at any time. *Id*. The appellate court held that because the defendant properly preserved his objection to the trial court's jurisdiction, it could consider all of the defendant's arguments related to that issue. *Id*.

¶ 14    Although the instant case does not involve a section 2-1401 petition, the court's reasoning in *White* is applicable to the facts of this case. Here, Ernest properly preserved the issue by raising the question of the validity of the process servers' legal authority to serve him. In other words, Ernest has raised the issue of propriety of service. Pursuant to *White*, we find that Ernest's argument that the process servers were improperly appointed is merely an elaboration of his challenge to the issue of proper service as a whole. Accordingly, we will consider all of Ernest's arguments on this issue.

¶ 15    Ernest argues that the Eskras were not properly authorized as special process servers because their employer, Amicus, was no longer in existence at the time they attempted to serve him. The power to appoint private detective agencies as special process servers is derived from section 2-202(a-5) of the Code (735 ILCS 5/2-202(a-5) (West 2008)). Section 2-202(a-5) states:

> "Upon motion and in its discretion, the court may appoint as a special process server a private detective agency certified under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004. Under the appointment, any employee of the private detective agency who is registered under that Act may serve the

process. The motion and the order of appointment must contain the number of the certificate issued to the private detective agency by the Department of Professional Regulation under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor and Locksmith Act of 2004." 735 ILCS 5/2-202(a-5) (West 2008).

"[S]trict compliance with statutes governing service of process is required." *Johnson*, 383 Ill. App. 3d at 912, 891 N.E.2d at 562.

¶ 16    Initially, the circuit court appointed Amicus and its employees as special process servers on June 2, 2009. Between July 25, 2009 and August 9, 2009, the Eskras attempted to serve Ernest at the main residence and alternate residence. In the affidavits seeking the court's permission for service by publication, the Eskras indicated that they were employees of Amicus. On August 19, 2009, the circuit court appointed the company Firefly and its employees as special process servers. However, Ernest argues that at the time when the Eskras attempted to serve him, Amicus no longer existed as a company. Thus, Ernest argues that the Eskras were not authorized to serve him as employees of Amicus. In response to a question on this point during oral argument on appeal, Citimortgage's counsel argued that Firefly was the successor to Amicus, thereby implying that the two are interchangeable for purposes of the court's order. Citimortgage argues that both Amicus and Firefly operated under the same license number, and both were appointed by the circuit court under that license number. Therefore, Citimortgage claims that Amicus did not cease to exist, it merely changed its name. It does not appear from the record that these arguments were developed and supported by documentation in the trial court. Therefore, the record is devoid of anything that supports or refutes Ernest's argument on this point. Both parties attempted to supplement their briefs before this court with documents that explain the transition from Amicus to Firefly. However, since none of these documents appear in the record on appeal, we cannot consider them in our analysis. See *Tekansky v. Pearson*, 263 Ill. App. 3d 759, 764, 635 N.E.2d 605, 609 (1994). Thus, we are unable to determine whether Amicus changed its name to Firefly or merged into another company to create Firefly or some other permutation. We are likewise unable to determine from the record exactly when the transition from Amicus to Firefly took place. The record on appeal shows that on June 2, 2009, the circuit court appointed Amicus and its employees as special process servers, and on August 19, 2009 the circuit court subsequently appointed Firefly and its employees as special process servers.

¶ 17    The statute explicitly requires that the agency appointed to serve process must be registered under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor and Locksmith Act of 2004 (Act) (225 ILCS 447/5-5 *et seq*. (West 2008)). See 735 ILCS 5/2-202(a-5) (West 2008). Since the record is devoid of information to the contrary, we assume that the trial court acted in accordance with the statutory requirement. See *Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101886, ¶ 38. Accordingly, we must assume that the Eskras were properly appointed by the circuit court and their attempts at personal service as employees of Amicus were not defective on that basis.

¶ 18    Ernest next argues that the service of process by publication was invalid because Citimortgage failed to conduct due inquiry in an effort to ascertain his whereabouts. Section 2-206 of the Code (735 ILCS 5/2-206 (West 2008)) sets forth the requirements for service by publication:

"Whenever, in any action affecting property or status within the jurisdiction of the court, including an action to obtain the specific performance, reformation, or rescission of a contract for the conveyance of land, plaintiff or his or her attorney shall file, at the office of the clerk of the court in which the action is pending, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending." 735 ILCS 5/2-206(a) (West 2008).

The plaintiff must conduct both "diligent inquiry" in ascertaining the defendant's residence and "due inquiry" in ascertaining the defendant's whereabouts before the plaintiff can properly execute an affidavit stating that the defendant cannot be found. *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 927-28, 376 N.E.2d 1029, 1033 (1978). The defendant may challenge the plaintiff's affidavit by filing an affidavit showing that upon due inquiry, he could have been found. *Household Finance Corp. III v. Volpert*, 227 Ill. App. 3d 453, 455, 592 N.E.2d 98, 99 (1992). Then, the plaintiff must either successfully question the conclusory nature of the defendant's challenge, or produce evidence showing in fact that the plaintiff had made due inquiry to locate the defendant so that process could be served upon him. *Horton*, 59 Ill. App. 3d at 927, 376 N.E.2d at 1033. If the defendant is able to present a significant issue with respect to the truthfulness of the affidavit filed by the plaintiff's agent for service by publication, then the trial court should hold an evidentiary hearing on the issue with the burden of proof being upon the plaintiff to establish that due inquiry was made to locate the defendant. *First Federal Savings & Loan Ass'n v. Brown*, 74 Ill. App. 3d 901, 907-08, 393 N.E.2d 574, 579 (1979).

¶ 19    In this case, Citimortgage filed an affidavit stating that Ernest could not be personally served because upon due inquiry, he could not be found. Ernest then filed a counteraffidavit (in addition to his motion to vacate the judgment and quash service of process and his motion to reconsider). His affidavit stated that upon due inquiry he could have been found. The affidavit raised factual conflicts with the affidavits of the Eskras upon which the court's order for publication had been based. Citimortgage challenged Ernest's assertions in its response. There was no evidentiary hearing on the issue of whether due inquiry was made in the attempts to locate Ernest. We do not mean to suggest that the trial court was required to hold an evidentiary hearing, even if there were indications of problems with the arguments and affidavits upon which the order for service by publication was based. However, the motion to reconsider contains sufficient factual statements which differed from the assertions of Citimortgage and were highly suggestive of a conflict. The trial court could then have used a hearing to resolve the factual conflicts. When Ernest filed his motion to reconsider, he requested a hearing. The court denied his motion and thus denied his request for an evidentiary hearing. Therefore, the question we must consider is whether Ernest's affidavit and argument presented a significant issue regarding the truthfulness and/or accuracy of the affidavit filed by Citimortgage upon which the trial court based its permission for service by publication.

¶ 20    Ernest argues that although Citimortgage may have conducted "diligent inquiry" by attempting to personally serve him 19 times at 2 different residences, it did not conduct "due inquiry." Ernest argues that Citimortgage failed to conduct due inquiry on a number of levels. For example, there was no effort to locate Ernest at his place of employment; there was a failure to investigate public records that could have aided in locating him; and there was a failure to contact Wildermuth, Ernest's attorney, who was known to Citimortgage and could have provided contact information. Ernest also points out that Citimortgage had his employment address on file as part of his mortgage application. Ernest also argues that Citimortgage had access to public records which includes personal information from Ernest's divorce proceedings. The personal information from those records could have been used to locate him. Ernest asserts that while a party may satisfy the diligent inquiry requirement, due inquiry may require checking a variety of sources such as employment records and court records before relying on service by publication. See *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 32, 847 N.E.2d 126, 131 (2006); *Brown*, 74 Ill. App. 3d at 907, 393 N.E.2d at 578-79. The tests for these two requirements are quite different. Due inquiry requires "an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit." *City of Chicago v. Leakas*, 6 Ill. App. 3d 20, 27, 284 N.E.2d 449, 455 (1972).

¶ 21    In response, Citimortgage argues that it conducted due inquiry in an effort to locate Ernest by visiting his 2 residences a total of 19 times at various times during weekdays and weekends. Citimortgage argues that Ernest's reliance on *Nasolo*, *Brown*, *Horton*, and *Leakas* in support of his argument is misplaced. Citimortgage claims that, in the cases cited by Ernest, the court found that the defendants raised a significant question as to whether the plaintiff conducted due inquiry only where the defendants' residences were unknown, or little to no effort was made to ascertain the defendants' residences. In *Nasolo*, the sheriff attempted to serve the defendant at her home four times. *Nasolo*, 364 Ill. App. 3d at 28, 847 N.E.2d at 128. The deputies noted that the attempts were unsuccessful because it appeared that the defendant had moved and the apartment was vacant. *Id*. However, the defendant affirmatively stated that she still lived in the apartment. *Id*. at 33, 847 N.E.2d at 132. The court held that the fact that the plaintiff had doubt as to where the defendant resided should have encouraged the plaintiff to further investigate the defendant's whereabouts. *Id*. Therefore, the court held that the defendant raised a significant issue as to whether the plaintiff conducted due inquiry and diligent inquiry in attempting to locate the defendant. *Id*. at 32-33, 847 N.E.2d at 132.

¶ 22    Similarly, in *Brown*, the plaintiff had doubt as to where the defendants resided, but did not investigate further. In *Brown*, the sheriff reported that he served the defendants by visiting their last known address and delivering a copy of the writ to Vivian Pittman. *Brown*, 74 Ill. App. 3d at 903, 393 N.E.2d at 576. The plaintiff then learned that the defendants had divorced a year before the sheriff attempted service, yet it did nothing to determine if the defendants' last known address was indeed their current address. *Id*. Defendant Richard Brown, Jr., stated that he did not live at the residence where Vivian Pittman was served and that no person named Vivian Pittman resided at his current residence. *Id*. at 904-05, 393 N.E.2d at 577. The appellate court found that the plaintiff knew where Richard Brown, Jr.,

was employed and was aware of his divorce proceedings at the time it filed its affidavit for service by publication. *Id*. at 907, 393 N.E.2d at 578. Thus, the court held that the defendants raised a significant issue with respect to the truthfulness of the plaintiff's affidavit. *Id*., 393 N.E.2d at 579.

¶ 23    In *Horton*, the plaintiff unsuccessfully attempted to serve the defendants at their last known address. *Horton*, 59 Ill. App. 3d at 924, 376 N.E.2d at 1031. The plaintiff relied on a title report that stated that the mortgaged premises appeared vacant, but habitable. *Id*. at 926, 376 N.E.2d at 1032. Based on only the title report, the plaintiffs filed an affidavit for service by publication which stated that upon " 'due and diligent inquiry, it could not be ascertained whether the [d]efendants were living or dead.' " *Id*. at 927, 376 N.E.2d at 1033. The appellate court found that in order to properly serve the defendants by publication, something more than mere want of knowledge concerning the defendants whereabouts must be shown. *Id*. The court held that the service by publication was void as to the defendants. *Id*. at 930, 376 N.E.2d at 1035.

¶ 24    In *Leakas*, the sheriff drove to the subject property in his car in an attempt to serve the defendant. *Leakas*, 6 Ill. App. 3d at 23, 284 N.E.2d at 452. Without leaving his vehicle, the sheriff looked at the building from a distance and noticed that the doors were boarded up. *Id*. The plaintiff then filed an affidavit for service by publication. *Id*. at 22, 284 N.E.2d at 451. The defendant showed that during the time in question, he had been using the building as a workshop, that signs on the building stated his name, telephone number, and address, and that he had lived in the building for 10 years. *Id*. at 23-24, 284 N.E.2d at 452. The appellate court found that the plaintiff did not attempt to make a well-directed effort in locating the defendant. *Id*. at 27, 284 N.E.2d at 455. Therefore, the court held that service by publication was void. *Id*. In our view, an analysis of these cases favor Ernest, not Citimortgage.

¶ 25    Citimortgage argues that the case at bar is most analogous to *Volpert*. In *Volpert*, the deputy sheriff attempted to serve the defendant at his last known residence 9 times over a 10-day period. *Volpert*, 227 Ill. App. 3d at 455, 592 N.E.2d at 99. The sheriff's return indicated " '[l]ights on-car in drive-won't answer door.' " *Id*. The trial court then appointed a special process server who repeatedly attempted to serve the defendant during the day, night, and weekend over a four-month period. *Id*. at 454-55, 592 N.E.2d at 98-99. The defendant confirmed that his last known address was indeed his current residence. *Id*. at 455, 592 N.E.2d at 99. The appellate court found that the plaintiff made a well-directed effort to serve the defendant pursuant to section 2-206 of the Code. *Id*. at 456, 592 N.E.2d at 100. The court reasoned that because the plaintiff knew where the defendant lived, due inquiry did not require the plaintiff to make an inquiry of the defendant's neighbors when the defendant could not be found. *Id*. The court rejected the defendant's argument that the plaintiff should have attempted service at the defendant's place of employment. The court pointed out that the defendant cited no authority for his argument, and his affidavit did not state that the plaintiff could have found him at his place of employment. *Id*. The court also noted that during the attempts at service, it appeared that someone was home but refused to answer the door. *Id*. at 455, 592 N.E.2d at 100. Therefore, the appellate court affirmed the trial court's denial of the defendant's motion to quash service by publication. *Id*. at 456, 592 N.E.2d at 100.

¶ 26    The facts in *Volpert* are distinguishable from the facts of the instant case. In this case, the Eskras attempted to serve Ernest 19 times in a period of less than a month. In *Volpert*, the sheriff and the process server repeatedly attempted to serve the defendant over a four-month period. Also, in *Volpert*, the court rejected the defendant's argument that the plaintiff could have served him at his place of employment because the defendant did not cite authority for his argument and did not state in his affidavit that he could be found at his place of employment. In this case, Ernest included many citations for all his arguments. He also stated in his affidavit that the Eskras lacked due diligence by not serving him at his place of employment, even listing his occupation as a Chicago fireman. Moreover, in *Volpert*, the sheriff's attempts at service suggested that the defendant was home but refused to answer the door. In this case, the Eskras did not mention any instances in which they thought Ernest was on the premises of either of his residences. The record does not suggest that Ernest was at all aware of the Eskras' attempts at service. Therefore, *Volpert* is not applicable to the instant case.

¶ 27    In order for the plaintiff to properly execute an affidavit in support of its motion for service by publication, it must conduct *both* diligent inquiry in ascertaining the defendant's residence *and* due inquiry in ascertaining the defendant's whereabouts. *Horton*, 59 Ill. App. 3d at 927-28, 376 N.E.2d at 1033. Citimortgage argues that in accordance with *Volpert*, *Nasolo*, *Brown*, *Horton*, and *Leakas*, the single most important factor in fulfilling the inquiry requirements of section 2-206 of the Code is ascertaining the defendant's residence. While we agree that ascertaining the defendant's residence is an important factor in determining whether due inquiry and diligent inquiry were accomplished, it is not the *only* factor that the court must consider. In this case, Charles Eskra attempted to serve Ernest at the main residence 10 times and Don Eskra attempted to serve Ernest at the alternate residence 9 times for a total of 19 attempts at service. Charles Eskra also spoke with a neighbor at the main residence who did not know Ernest. At first glance, it seems that Citimortgage fulfilled the diligent inquiry requirement by attempting to serve Ernest 19 times. However, the statements in Ernest's affidavit and the substance of his motion challenged that assumption and gave the trial court sufficient facts to find that an evidentiary hearing was warranted.

¶ 28    There are many indications of differences between Ernest's affidavit and those of the Eskras. For example, in Don Eskra's affidavit he stated that Ernest's name was not listed on the doorbells or mailboxes at the alternate residence. Ernest rebutted this statement in Eskra's affidavit by attaching photographs of the alternate residence that clearly showed Ernest's name on two doorbells. Ernest also supported his assertion by attaching affidavits from two residents of the alternate residence who stated that Ernest's name appeared on two doorbells. Ernest also attached a photograph showing that there was only *one* mailbox at the alternate residence and not mailboxes as stated in Don Eskra's affidavit. Although Don Eskra swore in his affidavit that he attempted to serve Ernest at the alternate residence nine times, he gave an inaccurate physical description of the property, which Ernest pointed out. Those inaccuracies were clearly highlighted in Ernest's affidavit. Such inaccuracies call into question whether the trial court could rely upon Don Eskra's affidavit. Thus, the validity of the sworn statements regarding at least 9 of the 19 attempts at serving Ernest should have been the subject of an evidentiary hearing. In challenging Charles Eskra's affidavit, Ernest

swore that during one of the times Charles claims to have attempted service at the main residence, there was a large birthday party in progress in the yard of the residence. Charles's affidavit made no mention of a party. This raises a question regarding at least 1 of Charles Eskra's 10 service attempts.

¶ 29 These facts point to significant questions which were sufficient to alert the trial court that an evidentiary hearing was warranted when coupled with Ernest's request for an evidentiary hearing. The fact that the request for an evidentiary hearing was only made in Ernest's motion for reconsideration should not negate its validity. Reconsideration by a trial court gives the court the opportunity to consider an important issue or aspect that may have been overlooked. It is well within the trial court's discretion to do so before a judgment hardens. In this case, while there is no *requirement* that the court grant an evidentiary hearing, there were sufficient factors to warrant such a hearing within the court's exercise of its discretion.

¶ 30 Ernest further questions whether Citimortgage conducted *due inquiry* in its effort to locate him. Ernest argues that Citimortgage could easily have served him at his place of employment, since it had his current employment information on file. Citimortgage counters that Ernest failed to show that it knew where he was employed. Citimortgage also claims that it was not required to search for Ernest at his place of employment, and that its contact with Ernest's employer was limited by the Fair Debt Collection Practices Act (15 U.S.C. § 1692 (2006)). Citimortgage argues that the Fair Debt Collection Practices Act allows a debt collector to contact a debtor's employer only to obtain location information. 15 U.S.C. § 1692b (2006). However, Ernest rebuts this argument by showing that persons attempting to serve legal process on another person in connection with the judicial enforcement of any debt are specifically excluded from the term "debt collector." 15 U.S.C. § 1692a(6)(D) (2006). Furthermore, the statute only prohibits communication "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(3) (2006). Thus, the Fair Debt Collection Practices Act did not prevent Citimortgage from contacting Ernest at his place of employment. Because there are conflicting statements regarding whether Citimortgage knew where Ernest was employed, there is a significant question regarding whether Citimortgage could have located Ernest at his place of employment and is therefore further indication of the need for an evidentiary hearing.

¶ 31 Ernest makes additional arguments that if Citimortgage could not find him at his residences, it should have at least tried to contact Wildermuth, whom Citimortgage knew to be his attorney. Ernest cites section 2-203.1 of the Code (735 ILCS 5/2-203.1 (West 2008)), which permits the court to order an alternative method of service upon plaintiff's motion and an affidavit stating that personally serving the defendant is impractical, including a specific statement showing that upon due inquiry the defendant cannot be found and reasonable efforts to effect service have been unsuccessful. Thus, Ernest argues that because Wildermuth was granted power of attorney regarding his mortgage account, Citimortgage could have filed a motion to serve Wildermuth once it was unable to locate him. Ernest points out that, depending on the circumstances, due inquiry and diligent inquiry may require the plaintiff to inquire with the defendant's known counsel. *Nasolo*, 364 Ill. App. 3d at 32, 847 N.E.2d at 131. He argues that in this case, due inquiry required Citimortgage to at least

attempt to contact Wildermuth, especially considering Ernest's unusual schedule due to his occupation as a fireman.

¶ 32     Citimortgage counters that section 2-203.1 of the Code is a permissive statute that allows for alternative methods of service, thus, it was not required to pursue the alternative that Ernest is suggesting. *Leakas*, 6 Ill. App. 3d at 27, 284 N.E.2d at 455. In this case, the record shows that Citimortgage did have Wildermuth's contact information as Ernest argues. The inference from his argument is that Citimortgage had an alternative, and more reasonable vehicle for locating him for service. Citimortgage was not required to attempt to serve Wildermuth, however, it certainly could have made the minimal effort to contact Wildermuth in an attempt to locate Ernest.

¶ 33     Ernest makes several additional arguments regarding the affidavits of the Eskras. However, those arguments have no bearing on the propriety of an evidentiary hearing to any greater extent than the arguments which we have already addressed. Ernest has clearly presented a significant amount of factual inconsistencies between his affidavit and Citimortgage's to warrant an evidentiary hearing. An evidentiary hearing will shed light upon the propriety of service by publication under the facts and circumstances of this case. We express no opinion on the outcome of such a hearing. Accordingly, we hold that the trial court erred in denying Ernest's motion for reconsideration. The judgment of the circuit court of Cook County is reversed and this matter is remanded to the circuit court for an evidentiary hearing to determine whether diligent inquiry and due inquiry were conducted in an effort to locate Ernest prior to the court granting leave for service by publication.

¶ 34     For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings.

¶ 35     Reversed and remanded.